UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

RONALD SOREL, on behalf of himself and
all others similarly situated,

                    Plaintiff,

    against

CAPITAL ONE SERVICES, LLC,
CAPITAL ONE BANK (USA), N.A., and
MRS ASSOCIATES, INC.,

                    Defendants.

Civil Action
No. 3:11-cv-00703(SRU)

**December 14, 2011**

---

## <u>MOTION FOR SUMMARY JUDGMENT</u>

NOW INTO COURT, through undersigned counsel, comes defendant, MRS BPO, LLC, formerly known as MRS Associates, Inc. ("MRS"), which, pursuant to Fed. R. Civ. P. 56 and L.R. 56, moves for summary judgment regarding the claims asserted by plaintiff, Ronald Sorel.

There are no genuine issues of material fact. As a matter of law, plaintiff's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and state law fail. The Court, therefore, should dismiss plaintiff's claims.

WHEREFORE, based on the foregoing, contemporaneously filed Statement of Uncontested Material Facts, deposition and affidavit testimony, and supporting memorandum, MRS respectfully requests the Court grant the requested relief.

**ORAL ARGUMENT REQUESTED**

Respectfully submitted,

/s/ Walter A. Shalvoy
Walter A. Shalvoy, Jr., Esq. (ct25132)
wshalvoy@maherandmurtha.com
MAHER AND MURTHA, LLC
528 Clinton Avenue
Bridgeport, CT 06605-1729
(203) 367-2700
(203) 335-0589 (fax)

Bryan C. Shartle, Esq.
bshartle@sessions-law.biz
(*pro hac vice*)
Michael D. Alltmont, Esq.
malltmont@sessions-law.biz
(*pro hac vice*)
SESSIONS, FISHMAN, NATHAN & ISRAEL,
L.L.C.
Lakeway Two, Suite 200
3850 N. Causeway Boulevard
Metairie, LA 70002
(504) 828-3700
(504) 828-3737 (fax)

Attorneys for Defendant,
MRS BPO, LLC, f/k/a
MRS Associates, Inc.

## CERTIFICATE OF SERVICE

I certify that on this 14th day of December 2011 a copy of the foregoing **Motion for Summary Judgment** was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel as described below. Parties may access this filing through the Court's system.

| | |
|---|---|
| Sergei Lemberg, Esq. | William C. Rand, Esq. |
| slemberg@lemberglaw.com | wcrand@wcrand.com |
| Lemberg & Associates, LLC | Office of William C. Rand |
| 1100 Summer Street, 3rd Floor | 228 East 45th Street, 17th Floor |
| Stamford, CT 06905 | New York, NY 10017 |
| Telephone: 203-653-2250 | Telephone: 212-286-1425 |
| Facsimile: 203-653-3424 | Facsimile: 646-688-3078 |
| Attorneys for Plaintiff | Attorneys for Plaintiff |

By:     /s/ Walter A. Shalvoy
        Walter A. Shalvoy, Jr. (ct25132)

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

RONALD SOREL, on behalf of himself and
all others similarly situated,

                Plaintiff,

      -against-

CAPITAL ONE SERVICES, LLC,
CAPITAL ONE BANK (USA), N.A., and
MRS ASSOCIATES, INC.,

           Defendants.

_____

Civil Action
No. 3:11-cv-00703(SRU)

December 14, 2011

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. PROCEDURAL HISTORY ...................................................................................2

III. LAW AND ARGUMENT SUMMARY ................................................................4

    *A. Plaintiff's FDCPA Claims against MRS Should Be Dismissed* ..........................5

        *1. The Capital One Letter Is Not a Communication from MRS* ...................5

        *2. The MRS Letter Does Not Violate the FDCPA*...........................................9

            *(a) The MRS Letter Does Not Violate Section 1692e* ........................10

            *(b) The MRS Letter Does Not Violate Section 1692g* ........................13

    *B. Plaintiff's CCPA Claim against MRS Should Be Dismissed*..............................16

    *C. Plaintiff's Civil Conspiracy Claim against MRS Should Be Dismissed*     16

IV. CONCLUSION....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

15 U.S.C. § 1692(e) ...................................................................................*passim*

15 U.S.C. § 1692a(2) .............................................................................................4

15 U.S.C. §§ 1692a(6)(B) & (F)(iii) ......................................................................5

15 U.S.C. § 1692g(b) ..................................................................................... 15-17

Conn. Gen. Stat.  36a-645 ....................................................................................17

Conn. Gen. Stat.  36a-800 ....................................................................................17

*Alibrandi v. Financial Outsourcing Services, Inc.,*

333 F.3d 82 (2d Cir. 2003)................................................................................ 5-6

*Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242 (1986)...............................................................................................4

*Bentley v. Great Lakes Collection Bureau,*

6 F.3d 60 (2d Cir. 1993)......................................................................................12

*Celotex Corp v. Catrett,*

477 U.S. 317 (1986)...............................................................................................4

*Clomon v. Jackson,*

988 F.2d 1314 (2d Cir. 1993)..............................................................................11

*Daros v. Chase Manhattan Bank,*

19 Fed.Appx. 26 (2d Cir. 2001)............................................................................6

*Ellis v. Solomon and Solomon, P.C.,*

591 F.3d 130 (2d Cir. 2010)...........................................................................6, 15

*Ellis v. Cohen & Slamowitz, LLP,*

701 F. Supp. 2d 215 (N.D. N.Y. 2010) .................................................................. 12

*Foti v. MRS Financial Systems, Inc.*,

424 F.Supp.2d 643 (S.D. N.Y. 2006) .................................................................... 5

*Gervais v. Riddle & Associates, P.C.*,

479 F. Supp. 2d 270 (D. Conn. 2007) ....................................................... 12-13, 16

*Graziano v. Harrison*,

950 F.2d 107 (3d Cir. 1991) ................................................................................ 16

*Greco v. Trauner, Cohen & Thomas, L.L.P.*,

412 F.3d 360 (2d Cir. 2005) ......................................................................... 5, 11-12

*Jacobson v. Healthcare Financial Services, Inc.*,

516 F.3d 85 (2d Cir. 2008) .............................................................................. 4, 15

*Jamaica Ash & Rubbish Removal Co., Inc. v. Ferguson*,

85 F.Supp.2d 174 (E.D. N.Y. 2000) ...................................................................... 5

*Jenkins v. Union Corp.*,

999 F. Supp. 1120 (N.D. Ill. 1998) ................................................................. 12-13

*Knowles v. Credit Bureau of Rochester, Div. of Rochester Credit Ctr., Inc.*,

1992 WL 131107 (W.D.N.Y. 1992) .................................................................... 13

*Madonna v. Acad. Collection Serv., Inc.*,

1997 WL 530101 (D. Conn. 1997) ............................................................ 12, 14, 17

*Marcus v. AT&T Corp.*,

138 F.3d 46 (2d Cir. 1998) ................................................................................. 11

*Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*,

739 F. Supp. 2d 109 (D. Conn. 2010) ...................................................................... 18

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*

475 U.S. 574 (1986) ............................................................................................ 4

*Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,*

32 F.3d 690 (2d Cir. 1994) ................................................................................. 11

*Pipiles v. Credit Bureau of Lockport,*

886 F.2d 22 (2d Cir. 1989) ................................................................................. 12

*Powell v. Computer Credit, Inc.,*

975 F.Supp. 1034 (S.D. Ohio 1997) ............................................................... 8-10

*Randle v. GC Services L.P.,*

48 F.Supp.2d 835 (N.D. Ill. 1999) ...................................................................... 10

*Riveria v. MAB Collections, Inc.,*

682 F. Supp. 174 (W.D.N.Y. 1988) .................................................................... 13

*Rogers v. Capital One Services, LLC,*

2011 WL 5829688 (2d Cir. 2011) ........................................................................ 5

*Romea v. Heiberger & Associates,*

163 F.3d 111 (2d Cir. 1998) ................................................................................. 5

*Rosa v. Gaynor,*

*784 F.Supp. 1* (D. Conn. 1989) ......................................................................... 11

*Russell v. Equifax A.R.S.,*

74 F.3d 30 (2nd Cir. 1996) ................................................................................. 16

*Sarno v. Midland Credit Mgmt., Inc.,*

435 F. App'x 44 (2d Cir. 2011) ........................................................................ 15

*Savino v. Computer Credit, Inc.,*

164 F.3d 81 (2d Cir.1998) .......................................................................... 15-16

*Shapiro v. Berkshire Life Ins. Co.,*

212 F.3d 121 (2d Cir. 2000) ............................................................................ 11

*Voris v. Resurgent Capital Services, L.P.,*

494 F. Supp. 2d 1156 (S.D. Cal. 2007) ........................................................... 16

*Wilson v. Northwestern Mut. Ins. Co.,*

625 F.3d 54 (2d Cir. 2010) .............................................................................. 10

*Woolfolk v. Van Ru Credit Corp.,*

783 F. Supp. 724 (D. Conn. 1990) .............................................................. 13-14

*Wood v. Capital One Services, LLC,*

718 F.Supp.2d 286 (N.D. N.Y. 2010) ............................................................ 9-10

## MEMORANDUM OF LAW

Defendant, MRS BPO, LLC, formerly known as MRS Associates, Inc. ("MRS"), submits this memorandum of law in support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and L.R. 7.

## I. INTRODUCTION

Plaintiff, Ronald Sorel, asserts claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Connecticut Creditors Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-645 *et seq.*, and civil conspiracy under Connecticut Law relating to two separate letters regarding his Capital One Bank (USA), N.A. ("Capital One Bank") credit card account. The first letter is a December 23, 2009 letter from Capital One Services, LLC ("COS"), captioned "Pre-Legal Notice" (the "Capital One Letter"). The second letter is a December 28, 2009 letter from MRS (the "MRS Letter").

There are no genuine issues of material fact. The Capital One Letter is *not* a communication from MRS. The Capital One Letter is on Capital One letterhead, or stationary, and is signed by COS. COS created, developed, and drafted the Capital One Letter. COS paid for the printing and mailing of the Capital One Letter. MRS had no involvement in the creation, development, drafting, mailing, or printing of the Capital One Letter. Nor was MRS involved in any way in deciding who would receive such Capital One Letters. Most importantly, at the time the Capital One Letter designated for plaintiff

1

was generated, MRS had not yet been referred plaintiff's account. The Capital One Letter does not and cannot create liability for MRS.

Additionally, the MRS Letter does not violate the FDCPA as a matter of law. The letter advises the consumer COS has placed his account with MRS for collection; the account meets COS' guidelines for a lawsuit and may be subject to litigation; and he has a right to dispute the debt. The MRS Letter does not threaten or suggest that a lawsuit has been filed or is rapidly forthcoming; nor does it overshadow or contradict plaintiff's right to dispute the debt. In light of the foregoing, the Court should grant MRS' summary judgment motion and dismiss plaintiff's claims.

## II. PROCEDURAL HISTORY

On December 21, 2010, plaintiff filed his class action complaint against Capital One Bank, COS, and MRS.[1] On May 11, 2011, after the lawsuit was transferred to the District of Connecticut, plaintiff filed his amended complaint.[2]

Plaintiff alleges several FDCPA claims against MRS relating to the Capital One Letter and MRS Letter.[3] Specifically, as it pertains to the Capital One Letter, plaintiff's "shotgun" complaint contains nine counts.[4]   Two

---

[1] Docket No. 1.
[2] Docket No. 29.
[3] Docket No. 29, at ¶¶ 72-142.
[4] In Count 1, plaintiff alleges defendants violated the FDCPA (§ 1692e(2)) by falsely representing the character, amount, and legal status of his debt. Id. at ¶¶ 72-79. Plaintiff avers the Capital One Letter violates the FDCPA because it allegedly falsely

arguments form the basis of plaintiff's claims against MRS. First, according to plaintiff, the Capital One Letter violates the FDCPA and CCPA. Second, plaintiff alleges MRS is liable for the FDCPA and CCPA violations because the Capital One Letter allegedly constitutes a communication *from MRS*.

As it pertains to the MRS Letter, plaintiff's complaint contains four

---

represents "the alleged debt remained in the hands of [Capital One Bank] and [COS], when, in fact, it was transferred to [MRS], a debt collector, for handling." Id. at ¶ 74. Plaintiff also contends the Capital One Letter violates the FDCPA because allegedly, by use of the term "Pre-Legal Notice" and by stating that the subject account "meets the guidelines for legal action," the defendants fraudulently represented that a court action was imminent when in fact none of the defendants had the present intent or ability to commence a lawsuit." Id. at ¶ 75. In Count 2, plaintiff alleges defendants violated the FDCPA (§ 1692e(5)) by threatening to take action which was not presently intended to be taken. Id. at ¶¶ 80-83. In Count 3, plaintiff alleges defendants violated the FDCPA (§ 1692e(10)) through the use of deception. Id. at ¶¶ 84-89. In Count 4, plaintiff alleges defendants violated the FDCPA (§ 1692e(11)) by failing to identify in the Capital One Letter that the communication was an attempt to collect a debt. Id. at ¶¶ 90-94. In Count 5, plaintiff alleges defendants violated the FDCPA (§ 1692e(14)) by using a business, company, or organization name other than the true name of the debt collector's business, company, or organization. Id. at ¶¶ 95-98. Plaintiff avers "Defendants' use of the name 'Capital One' in place and instead of the names of [MRS] and [COS], and Defendants' failure to identify [MRS] as having a connection to the Notice, constitute violations of 15 U.S.C. § 1692e(14)." Id. at ¶ 97. In Count 6, plaintiff alleges defendants violated the FDCPA (§ 1692f) by using unfair and unconscionable means to collect his debt. Id. at ¶¶ 99-102. In Count 7, plaintiff alleges defendants violated the FDCPA (§ 1692g(a)) by failing to identify his validation rights in the Capital One Letter. Id. at ¶¶ 103-106. In Count 8, plaintiff alleges defendants violated the FDCPA (§ 1692g(b)) by "overshadowing" his validation rights. Id. at ¶¶ 107-110. Plaintiff avers "the content of the Initial Demand overshadows and is inconsistent with the Consumer's rights to dispute the debt." Id. at ¶ 109. In Count 9, plaintiff alleges defendants violated the CCPA (§ 36a-645, *et seq.*) because the above referenced conduct represents an actionable claim for harassment and deceptive practices. Id. at ¶¶ 111-117. Though plaintiff states the allegation is against all defendants, including MRS, the CCPA only applies to "creditors," and plaintiff seeks damages only from Capital One Bank and COS, not MRS. Id. at ¶ 117.

counts.[5]  Two arguments form the basis of plaintiff's claims.  First, according to plaintiff, the MRS Letter threatens action not presently intended to be taken. Second, the consumer's 30-day right to dispute is overshadowed or contradicted.  Plaintiff seeks to assert all claims on a class action basis.[6]

### III. LAW AND ARGUMENT SUMMARY

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Substantive law determines the materiality of facts and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary Judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[5] In Count 10, plaintiff alleges MRS violated the FDCPA (§ 1692e(2)) by falsely representing the character, amount or legal status of his debt. Id. at ¶¶ 118-123. Plaintiff alleges the MRS Letter violates the FDCPA by stating the plaintiff's may be subject to "fees and penalties," and is "lawsuit eligible," MRS fraudulently represented that a court action was imminent when in fact MRS knew none of the defendants had the present intent or ability to commence a lawsuit. Id. at ¶ 121. In Count 11, plaintiff alleges MRS violated the FDCPA (§ 1692e(5)) by threatening to take action which is not presently intended to be taken. Id. at ¶¶ 124-127. In Count 12, plaintiff alleges MRS violated the FDCPA (§ 1692e(10)) by use of deception to collect a debt. Id. at ¶¶ 128-132. In Count 13, plaintiff alleges MRS violated the FDCPA (§ 1692g(b)) by overshadowing the validation notice. Id. at ¶¶ 133-137. Plaintiff avers that the content of the Capital One Letter and the MRS Letter overshadows the consumer's rights to dispute the debt. Id. at ¶¶ 135-136. In Count 13.1 (the second "Count 13"), plaintiff alleges all defendants committed civil conspiracy under Connecticut law. Id. at ¶¶ 138-142.

[6] Docket No. 29, at ¶¶ 53-71.

(1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. In fact, "there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish Removal Co., Inc. v. Ferguson*, 85 F.Supp.2d 174, 180 (E.D. N.Y. 2000).

## A. *Plaintiff's FDCPA Claims against MRS Should Be Dismissed*

Plaintiff brings claims against MRS relating to both the Capital One Letter and the MRS Letter. Plaintiff's claims as they relate to the Capital One Letter fail because the letter is not a communication from MRS. Plaintiff's claims as they relate to the MRS Letter are unsupported by law.

### 1. *The Capital One Letter Is Not a Communication from MRS*

"Congress enacted [the] FDCPA in order 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (*quoting* 15 U.S.C. § 1692(e)); *see also Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 89 (2d Cir. 2008). "In order to be subject to some of the protections of the FDCPA, correspondence must be a 'communication' within the meaning of the Act." *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643, 654 (S.D. N.Y. 2006). "The FDCPA defines 'communication' very broadly as 'the conveying of information regarding a debt directly or indirectly to any person through any medium.'" *Romea v. Heiberger & Associates*, 163 F.3d 111, 114 n. 2 (2d Cir. 1998) (*quoting* 15 U.S.C. § 1692a(2)). In order for the FDCPA to be applicable, however, *the communication must be from a debt collector*. As the Second Circuit has ruled, "the [FDCPA] subjects third-party debt collectors to limitations on the content and nature of *their correspondence with debtors*[.]" *Alibrandi v. Financial Outsourcing Services, Inc.*, 333 F.3d 82, 85 (2d Cir. 2003) (emphasis added).

Many of plaintiff's FDCPA claims relate to the Capital One Letter.[7] For purposes of its motion only, MRS will assume the Capital One Letter constitutes a "communication" under the FDCPA. But the "communication" is *not from MRS*. The record evidence establishes the Capital One Letter is a

---

[7] Docket No. 29, at ¶¶ 72-110.

communication *from COS*.[8]

      The Capital One Letter is on Capital One letterhead, or stationary.[9]  The Capital One Letter is *not* on MRS letterhead, or stationary.[10]  The Capital One Letter is signed by COS.[11]  The Capital One Letter is *not* signed by MRS, nor is MRS named or mentioned in the Capital One Letter.[12]  COS created, developed, and drafted the template Capital One Letter; specifically, COS' Brand Department wrote the template Capital One Letter.[13]  COS paid for the printing and mailing of the Capital One Letter.[14]  COS decides who receives "Pre-Legal Notice" letters, such as the Capital One Letter plaintiff received based upon certain criteria established by COS.[15]  COS employees developed

---

[8] This conclusion does *not* mean the communication is subject to the FDCPA.  The FDCPA "focuses on regulating interactions between 'debt collectors' and 'consumers.'" *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010). "In order to be subject to liability under the FDCPA, the person attempting to collect a debt must be a 'debt collector.'" *Daros v. Chase Manhattan Bank*, 19 Fed.Appx. 26, 27 (2d Cir. 2001).  "[C]reditors generally are not subject to the FDCPA[.]" *Alibrandi*, 333 F.3d at 85.  In addition, the FDCPA excludes certain corporate affiliates of the creditor and account servicers. 15 U.S.C. §§ 1692a(6)(B) & (F)(iii).

[9] Docket No. 29, at ¶ 21.

[10] Id.

[11] Id.

[12] Id.

[13] R. Valdepenas 2/18/11 Depo., at pp. 27-29, lns. 12-21.  Mr. Valdepenas, a corporate representative of COS, was deposed in the matter *Wood v. Capital One Services, LLC, et al.*, case no. 09-cv-01445, USDC Northern District of New York. The *Wood* matter concerns the same form letter as the Capital One Letter at issue in the present case.  The parties have agreed that all production in *Wood* will be admissible in this matter.  Docket No. 61, at p. 5.

[14] R. Valdepenas 2/18/11 Depo., at pp. 32-33, lns. 14-1; p. 105, lns. 8-15.

[15] R. Valdepenas 10/27/11 Depo., at p. 35, lns. 12-18; p. 69, lns. 7-20.  Mr. Valdepenas was deposed for a second time on October 27, 2011, in relation to this matter.

the template for the Capital One Letter internally.[16]   No third-party debt collector asked COS to develop the Capital One Letter on its behalf.[17]   COS sent the Capital One Letter to all account holders whose accounts were 120 days delinquent and satisfied the requirements for legal action if the account is not paid prior to charge-off.[18]

Perhaps most importantly, the Capital One Letter cannot be deemed a communication *from MRS* because plaintiff's Capital One Bank account *had not even been sent to MRS at the time the Capital One Letter was generated*. The Capital One Letter is dated December 23, 2009.[19]   On December 23, 2009, COS' automated system initiated the process to create and disseminate the Capital One Letter which was sent to plaintiff.[20]   During his deposition, Mr. Valedepenas explained plaintiff's account was designated for handling by MRS as part of a nightly evaluation process occurring in the early hours of December 24, 2009.[21]   Michael Meyer, MRS' Chief Information and Chief Security Officer, testified MRS' computer system grabbed a placement file containing plaintiff's account on December 24, 2009.[22]

*Powell v. Computer Credit, Inc.*, 975 F.Supp. 1034 (S.D. Ohio 1997) provides helpful guidance.  In *Powell*, the plaintiff asserted FDCPA claims

---

[16] R. Valdepenas 9/14/11 Affidavit, at ¶ 11.
[17] Id.
[18] Id.
[19] Docket No. 29, at ¶ 21.
[20] R. Valdepenas 9/14/11 Affidavit; ¶ 13.
[21] R. Valdepenas 10/27/11 Depo., at pp. 37-38, lns. 17-8.
[22] M. Meyer Depo., at pp. 42-43, lns. 17-14.

based upon a letter (a "ComputerGram") he received. *See Powell*, 975 F.Supp. at 1040-1041. The content of the letter suggested the letter was from the creditor. *Id.* The plaintiff, however, alleged the letter was from the defendant because the letter was printed by the defendant on the defendant's stationary. *Id.* The plaintiff alleged the letter violated the FDCPA because the letter failed to contain the required FDCPA disclosures, conveyed a false sense of urgency, and improperly appeared to be from the creditor. *Id.* The court dismissed the plaintiff's claims against the defendant, stating: "The Court agrees with the Defendant's conclusion—the ComputerGram is a communication from [the creditor] and not the Defendant." *Id.* at 1040. The court dismissed the plaintiff's FDCPA claims and ruled:

> Undisputed evidence presented to the Court indicates that the above letter is a communication from Mercy Medical Center, and therefore, is not subject to the FDCPA, which does not apply to creditors who attempt to collect their own debts in their own name. First, the return address and telephone number clearly indicate that the communication was from Mercy Medical Center. Second, the text of the letter itself first thanks the recipient for choosing Mercy Medical Center, and invites the recipient to telephone Mercy Hospital regarding the unpaid bill.
>
> The Plaintiff points out that the ComputerGram was printed by the Defendant on the Defendant's stationery, and that the ComputerGram was mailed by the Defendant. Because of this printing and mailing, the Plaintiff argues that the ComputerGram is subject to the FDCPA as a communication from a debt collector. The Court finds, however, that under the undisputed facts of this case, that the ComputerGram of May 18, 1995, is not a communication from a debt collector.
>
> In reviewing Defendant's Exhibit A, the Court notes that Mercy Medical Hospital received an example of a collection Letter from

the Defendant and made significant changes to the language of the Letter before approving the Letter. The changes were significant enough that the communication in the Letter was meant to be a communication from Mercy Medical Center and not from the Defendant. This is especially true in light of the fact that the primary motivation behind the initial decision to send the ComputerGram was past experience with referring accounts to debt collectors without first receiving a statement from Mercy Medical Center, a situation which was perceived as less than desirable.

Thus, the Court finds, based upon the undisputed facts, that Mercy Medical Center used the Defendant as merely a mailing service and not a collection service. The ComputerGram is not a communication from a debt collector and therefore is not subject to the FDCPA.

*Id.* at 1041 (citations omitted).

As in *Powell*, the letter at issue here clearly indicates who it is from—COS. Indeed, MRS is not even mentioned in the Capital One Letter, which is "strong evidence" that the communication is *not* from MRS. *See Randle v. GC Services L.P.*, 48 F.Supp.2d 835, 839 n. 6 (N.D. Ill. 1999) ("If [defendant's] name and address were not in the letter, this would be strong evidence that it was not operating as the debt collector."). The Capital One Letter is a communication from COS.

### 2. The MRS Letter Does Not Violate the FDCPA

Plaintiff alleges the MRS Letter violates Sections 1692e and 1692g of the FDCPA by falsely threating imminent litigation and overshadowing notice of the plaintiff's 30-day right to dispute. Plaintiff's allegations are not supported by fact or law. First, the letter truthfully advises the plaintiff that his

account has been designated lawsuit eligible by COS and failure to pay may result in litigation.  It does not state or infer that a lawsuit has been filed or is rapidly forthcoming.   Second, the aforementioned advisement neither overshadows nor contradicts the notice advising the consumer he has the right to dispute the debt.   It makes no demands such that the least sophisticated consumer would be left uncertain of his right to dispute the debt within 30 days of receipt of the notice.  The Court should dismiss plaintiff's claims relating to the MRS Letter.

### *(a) The MRS Letter Does Not Violate Section 1692e*

Plaintiff alleges the MRS Letter violates Sections 1692e(2), 1692e(5), and 1692e(10) by threatening legal action when in fact no defendants had the intent or ability to commence a lawsuit.[23]  Plaintiff is wrong.  First, the MRS Letter does not *threaten* litigation, but informs the consumer that the creditor has identified the account as subject to litigation.   With a balance owed of $13,528.68, even the least sophisticated consumer would understand that litigation may be a viable option.  Second, the language plaintiff complains of is truthful, any consumer receiving the MRS Letter would have been pre-qualified by COS for legal action.

The FDCPA forbids a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Rosa v. Gaynor,* 784 F.Supp. 1, 3 (D. Conn. 1989) (*quoting* 15 U.S.C. §

---

[23] Docket No. 29, ¶¶ 118-134.

1692e).   The Second Circuit has adopted the least-sophisticated consumer standard for application in cases under § 1692e.  *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).  Section 1692e includes sixteen subsections that provide a non-exhaustive list of practices that fall within the section's ban.  *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993).  "These practices include the threat to take any action that cannot legally be taken or that is not intended to be taken." *Id. (quoting* 15 U.S.C. § 1692e(5)).  "Courts look to the content of the communication in order to determine whether the clear import of the language, taken as a whole, is that some type of legal action has already been or is about to be initiated and can be averted from running its course only by payment." *Gervais v. Riddle & Associates, P.C.*, 479 F. Supp.2d 270, 274 (D. Conn. 2007) (internal quotes omitted) (*quoting Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 25 (2d Cir.1989)).

"A court should consider whether the language in the letters explicitly threatens that legal action will be taken, or whether it simply describes available alternatives which include possible legal action." *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 221 (N.D. N.Y. 2010) (internal quotations omitted).  "In order to establish a violation of 15 U.S.C. § 1692e(5) because of the indication in the communication complained of that nonpayment might lead to suit, plaintiff would have to show that a lawsuit—a routine debt collection device where negotiations fail—could be ruled out." *Madonna v. Acad. Collection Serv., Inc.*, 1997 WL 530101 *6 (D. Conn.

1997).  "For a collection letter to threaten legal action under § 1692e(5), it must communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made." *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998).   "The least-sophisticated consumer, when explicitly told that litigation is merely being considered as an option, cannot reasonably believe that litigation is authorized and rapidly forthcoming, particularly where the party making the communication is not an attorney." *Gervais*, 479 F. Supp.2d at 275.

Plaintiff complains the following language fraudulently represented that a court action was imminent when none of the defendants had the present intent or ability to commence a lawsuit:

> At this point in time, your account has been pre-qualified by Capital One as lawsuit eligible.  If we do not hear from you regarding this important business matter, your account may be subject to litigation.  If this were to occur, your account may incur additional fees and penalties if allowed under the state law of your jurisdiction.[24]

Plaintiff is wrong.  Numerous courts have found that similar language, and in some cases far stronger language, did *not* violate 1692e. *See Knowles v. Credit Bureau of Rochester, Div. of Rochester Credit Ctr., Inc.*, 1992 WL 131107 *1 (W.D. N.Y. 1992) ("FAILURE TO PAY WILL LEAVE OUR CLIENT NO CHOICE BUT TO CONSIDER LEGAL ACTION" did not violate 1692e); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 178

---

[24] Docket No. 29, ¶¶ 121, 126, 131; MRS Letter, Exhibit B to Docket No. 29.

(W.D.N.Y. 1988) ("IT IS UNFORTUNATE THAT YOU DO NOT SEEM TO CARE, AND YOU LEAVE US NO CHOICE BUT TO ADVISE YOUR CREDITOR THAT YOU HAVE IGNORED OUR EFFORTS, AND THAT LEGAL ACTION MAY BE NECESSARY IN ORDER TO COLLECT THIS BIL (SIC)" did not violate 1692e); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 727 (D. Conn. 1990) ("legal action will be recommended" did not violate 1692e); *Madonna*, 1997 WL 530101 at *6-9 (holding the following language did *not* violate 1692e: "failure to comply may result in our informing our client that you have refused to cooperate, they may choose to pursue legal action").

The MRS Letter does not threaten litigation.  Like the letters at issue in *Knowles*, *Rivera*, *Woolfolk*, and *Madonna*, the MRS Letter merely informs plaintiff that litigation is an option.  It does not state that legal action will be taken, has been taken, or that legal action is rapidly forthcoming if payment is not made.  Plaintiff has not, and cannot, identify any language in the MRS Letter that would lead the least sophisticated consumer to believe that a lawsuit has been filed or is imminent.  Additionally, the least sophisticated consumer would understand that they might get sued on a large and unpaid debt.  See *Madonna*, 1997 WL 530101 at *9.

Furthermore, the statements "your account may be subject to litigation" and "your account has been pre-qualified by Capital One as lawsuit eligible" *are true*.  The program by which plaintiff's account was placed with MRS was

the Pre-Legal Program.  Plaintiff's account was more than 120 days delinquent when placed with MRS, and was part of a batch of accounts in the Pre-Legal Program whose balance exceeded COS' threshold for legal action if the account charged-off.[25]  Moreover, MRS reasonably believed plaintiff's account was subject to litigation, as the contract between MRS and COS provides "*[a]ll* Pre-Legal Program Accounts that charge off *will be* reviewed for possible legal action in Capital One's post charge off legal network."[26]  In summary, the MRS Letter is truthful, not deceptive, and does not violate Section 1692e.

### (b) The MRS Letter Does Not Violate Section 1692g

Section 1692g of the FDCPA requires a debt collector provide debtors with written notice that they have 30 days to dispute a debt or the collection agency may assume the debt valid.  *See Sarno v. Midland Credit Mgmt., Inc.*, 435 F. Appx. 44, 45 (2d Cir. 2011).  "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010), *quoting* 15 U.S.C. § 1692g(b).  "Whether collection activities or communications within the validation period overshadow or are inconsistent with a validation notice is determined under the least sophisticated consumer standard." *Id.*  In

---

[25] R. Valdepenas 9/14/11 Affidavit, at ¶¶ 5, 10-11.
[26] Barnshaw Depo., at pp. 61-62, lns. 1-21.

applying the least sophisticated consumer standard, the courts must "bear in mind the Act's dual purpose: in addition to protecting consumers against deceptive debt collection practices, the objective test we apply protects debt collectors from unreasonable constructions of their communications." *Jacobson,* 516 F.3d at 90 (internal quotes omitted). "The FDCPA does not aid plaintiffs whose claims are based on bizarre or idiosyncratic interpretations of collection notices." *Id.*

"A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." *Savino v. Computer Credit, Inc.,* 164 F.3d 81, 85 (2d Cir. 1998). "Examples of overshadowing or contradiction within a validation notice include demands for immediate payment and threats to take adverse action against the consumer prior to the expiration of the thirty-day dispute period." *Gervais,* 479 F. Supp. 2d at 277 (internal quotations omitted); *see also Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir. 1991) ("[I]f a letter telling the debtor about the right to respond within thirty days concurrently instructs him to make payment within ten days, the demand and its conflicting deadline overshadows the right to seek validation."); *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2nd Cir. 1996) (threatening to post the debt if not paid within 10 days contradicted the validation notice.) "Most courts find overshadowing in the presence of language implying that the debtor must make payment immediately, thereby

obscuring the message that the debtor has the right to dispute the debt within 30 days." *Voris v. Resurgent Capital Services, L.P.*, 494 F. Supp. 2d 1156, 1169 (S.D. Cal. 2007).

Plaintiff alleges the 30-day validation notice is overshadowed and contradicted by the same language he alleges threatens litigation.[27] Plaintiff is wrong. First, the 30-day validation notice itself tracks the very language Congress prescribed. 15 U.S.C. § 1692g. The validation notice, printed on the front of the letter and in the same font and size as all other parts of the letter, stands alone under the headline "**IMPORTANT CONSUMER INFORMATION**" (sic). The notice clearly and unambiguously advises the consumer of his right to dispute the debt.

Second, plaintiff does not and cannot point to any language in the letter that would make the least sophisticated consumer uncertain of his rights to dispute the debt. Like *Madonna*, the letter "makes no demand for immediate payment; it establishes no deadline which arguably could have confused the consumer as to the 30-day dispute period; and it does not make threats which may cause a consumer to misunderstand or ignore his statutory rights." *Madonna*, 1997 WL 530101 at *5. For the foregoing reasons, plaintiff's claims pursuant to 1692g should be dismissed.

### *B. Plaintiff's CCPA Claim against MRS Should Be Dismissed*

---

[27] Docket No. 29, at ¶¶ 21, 133-137.

In Count 9, directed "AGAINST ALL DEFENDANTS," plaintiff alleges violations of the CCPA, Conn. Gen. Stat. 36a-645, *et seq.* The CCPA does not apply to "consumer collection agencies" such as MRS. The CCPA only applies to, and provides remedies against, creditors. Count 9 of plaintiff's complaint should be dismissed as to MRS.

### C. Plaintiff's Civil Conspiracy Claim against MRS Should Be Dismissed

Plaintiff alleges all defendants combined and collaborated to send fraudulent letters to consumers on behalf of MRS. Plaintiff's claim is derivative of his FDCPA and CCPA claims, which are unsupported by law and fact. *See Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 113 (D. Conn. 2010) ("civil conspiracy is not an independent cause of action"). Furthermore, civil conspiracy requires "a combination between two or more persons" to commit an unlawful act. *Id.* On December 7, 2011, plaintiff dismissed all claims against the alleged co-conspirators Capital One Bank and COS with prejudice.[28] Accordingly, plaintiff's claim for civil conspiracy should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant MRS' Motion for Summary Judgment and dismiss plaintiff's FDCPA, CCPA, and civil conspiracy claims.

---

[28] Docket No. 78.

Respectfully submitted,

/s/ Walter A. Shalvoy
Walter A. Shalvoy, Jr. ct25132
wshalvoy@maherandmurtha.com
MAHER AND MURTHA, LLC
528 Clinton Avenue
Bridgeport, CT 06605-1729
(203) 367-2700
(203) 335-0589 (fax)


Bryan C. Shartle, Esq.
bshartle@sessions-law.biz
(*pro hac vice*)
Michael D. Alltmont, Esq.
malltmont@sessions-law.biz
(*pro hac vice*)
SESSIONS, FISHMAN, NATHAN &
ISRAEL, L.L.C.
Lakeway Two, Suite 200
3850 N. Causeway Boulevard
Metairie, LA 70002
Telephone: 504-828-3700
Facsimile: 504-828-3737

Attorneys for Defendant,
MRS BPO, LLC, f/k/a
MRS Associates, Inc.

## CERTIFICATE OF SERVICE

I certify that on this 14th day of December 2011, a copy of MRS' **Memorandum of Law in Support of Motion for Summary Judgment** was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel as described below.  Parties may access this filing through the Court's system.

Sergei Lemberg, Esq.
slemberg@lemberglaw.com
Lemberg & Associates, LLC
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: 203-653-2250
Facsimile: 203-653-3424
Attorneys for Plaintiff

William C. Rand, Esq.
wcrand@wcrand.com
Office of William C. Rand
228 East 45th Street, 17th Floor
New York, NY 10017
Telephone: 212-286-1425
Facsimile: 646-688-3078
Attorneys for Plaintiff

By:   /s/ Walter A. Shalvoy
      Walter A. Shalvoy, Jr. (ct25132)

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

RONALD SOREL, on behalf of himself and
all others similarly situated,

                   Plaintiff,

    against

CAPITAL ONE SERVICES, LLC,
CAPITAL ONE BANK (USA), N.A., and
MRS ASSOCIATES, INC.,

                   Defendants.

Civil Action
No. 3:11-cv-00703(SRU)

December 14, 2011

_____

## LOCAL RULE 56(a) STATEMENT OF UNCONTESTED MATERIAL FACTS

NOW INTO COURT, through undersigned counsel, comes defendant, MRS BPO, LLC, formerly known as MRS Associates, Inc. ("MRS"), which, pursuant to Local Rule 56(a), files this Statement of Uncontested Material Facts. MRS respectfully requests the Court consider the following:

1.      In or around December 2009, plaintiff, Ronald Sorel received a letter from Capital One Services, LLC ("COS") dated December 23, 2009, bearing a caption "PRE-LEGAL NOTICE" (the "Capital One Letter").[1]

2.      The Capital One Letter is on Capital One letterhead, or stationary.[2]

---

[1] Docket No. 29, at ¶ 21.
[2] Id.

1

3.      The Capital One Letter is *not* on MRS letterhead, or stationary.[3]

4.      The Capital One Letter is signed by COS.[4]

5.      The Capital One Letter is *not* signed by MRS, nor is MRS named or mentioned in the Capital One Letter.[5]

6.      COS created, developed, and drafted the template Capital One Letter; specifically, COS' Brand Department wrote the template Capital One Letter.[6]

7.      COS paid for the printing and mailing of the Capital One Letter.[7]

8.      COS decides who receives "Pre-Legal Notice" letters such as the Capital One Letter plaintiff received based upon certain criteria established by COS.[8]

9.      COS employees developed the template for the Capital One Letter internally.[9]

10.     No third-party debt collector asked COS to develop the Capital

---

[3] Id.

[4] Id.

[5] Id. at ¶¶ 10-11.

[6] R. Valdepenas 2/18/11 Depo., at pp. 27-29, lns. 12-21, attached as **Exhibit A**. Mr. Valdepenas, a corporate representative of COS, was deposed in the matter *Wood v. Capital One Services, LLC, et al.*, case no. 09-cv-01445, USDC Northern District of New York. The *Wood* matter concerns the same form Capital One Letter as the Capital One Letter at issue in the present case. The parties have agreed that all production in *Wood* will be admissible in this matter. Docket No. 61, p. 5.

[7] R. Valdepenas 2/18/11 Depo., at pp. 32-33, lns. 14-1; p. 105 lns. 8-15.

[8] R. Valdepenas 10/27/11 Depo., at p. 35, lns. 12-18; p. 69, lns. 7-20, attached as **Exhibit B**. Mr. Valdepenas was deposed for a second time on October 27, 2011, in relation to this matter.

[9] R. Valdepenas 9/14/11 Affidavit, at ¶ 11, attached as **Exhibit C**.

2

One Letter on its behalf.[10]

11.     COS sent the Capital One Letter to all account holders whose accounts were 120 days delinquent and satisfied the requirement for legal action if the account is not paid prior to charge-off.[11]

12.     The Capital One Letter is dated December 23, 2009.   On December 23, 2009, COS' automated system initiated the process to create and disseminate the Capital One Letter which was sent to plaintiff.[12]

13.     Plaintiff's account was designated for handling by MRS as part of a nightly evaluation process occurring in the early hours of December 24, 2009.[13]

14.     MRS' computer system grabbed a placement file containing plaintiff's account on December 24, 2009.[14]

15.     Plaintiff's account was more than 120 days delinquent when placed with MRS, and was part of a batch of accounts whose balance exceeded COS' threshold for legal action if the account charged-off.[15]

16.     Plaintiff received a letter from MRS, dated December 28, 2009 ("the MRS Letter").  The MRS Letter states:

> At this point in time, your account has been pre-qualified by Capital One as lawsuit eligible.  If we do not hear from you

---

[10] Id.
[11] Id.
[12] Id. at ¶ 13.
[13] R. Valdepenas 10/27/11 Depo., at pp. 37-38, lns. 17-8.
[14] M. Meyer Depo., at pp. 42-43, lns. 17-14, attached as **Exhibit D**.
[15] R. Valdepenas 9/14/11 Affidavit, at ¶¶ 5, 10-11.

regarding this important business matter, your account may be subject to litigation.  If this were to occur, your account may incur additional fees and penalties if allowed under the state law of your jurisdiction.[16]

17.     The contract between MRS and COS provides "*[a]ll* Pre-Legal Program Accounts that charge off *will be* reviewed for possible legal action in Capital One's post charge off legal network."[17]

18.     The MRS Letter advises plaintiff of his right to dispute the debt:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.[18]

---

[16] MRS Letter, Exhibit B to Docket No. 29.
[17] W. Barnshaw Depo., pp. 61-62, lns. 1-21, attached as **Exhibit E**.
[18] MRS Letter, Exhibit B to Docket No. 29.

4

Respectfully submitted,

/s/ Walter A. Shalvoy
Walter A. Shalvoy, Jr. ct25132
wshalvoy@maherandmurtha.com
MAHER AND MURTHA, LLC
528 Clinton Avenue
Bridgeport, CT 06605-1729
(203) 367-2700
(203) 335-0589 (fax)

Bryan C. Shartle, Esq.
bshartle@sessions-law.biz
(*pro hac vice*)
Michael D. Alltmont, Esq.
malltmont@sessions-law.biz
(*pro hac vice*)
SESSIONS, FISHMAN, NATHAN &
ISRAEL, L.L.C.
Lakeway Two, Suite 200
3850 N. Causeway Boulevard
Metairie, LA 70002
Telephone: 504-828-3700
Facsimile: 504-828-3737

Attorneys for Defendant,
MRS BPO, LLC, f/k/a
MRS Associates, Inc.

5

## CERTIFICATE OF SERVICE

I certify that on this 14th day of December 2011, a copy of MRS'

**LOCAL RULE 56(a) STATEMENT OF UNCONTESTED MATERIAL**

**FACTS** was filed electronically in the ECF system. Notice of this filing will

be sent to the parties of record by operation of the Court's electronic filing

system, including plaintiff's counsel as described below. Parties may access

this filing through the Court's system.

| | |
|---|---|
| Sergei Lemberg, Esq. | William C. Rand, Esq. |
| slemberg@lemberglaw.com | wcrand@wcrand.com |
| Lemberg & Associates, LLC | Office of William C. Rand |
| 1100 Summer Street, 3rd Floor | 228 East 45th Street, 17th Floor |
| Stamford, CT 06905 | New York, NY 10017 |
| Telephone: 203-653-2250 | Telephone: 212-286-1425 |
| Facsimile: 203-653-3424 | Facsimile: 646-688-3078 |
| Attorneys for Plaintiff | Attorneys for Plaintiff |

By:     /s/ Walter A. Shalvoy
         Walter A. Shalvoy, Jr. (ct25132)

# EXHIBIT A

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

------------------------------

GARETH D. WOOD, in his own behalf and on
behalf of all others similarly situated,

              Plaintiff,

     vs.

                             Civil Action No. 5:09-cv-1445
                                 (NPM/DEP)

CAPITAL ONE SERVICES, LLC.
NCO FINANCIAL SYSTEMS, INC. and
CAPITAL ONE BANK (USA), N.A.,

              Defendants.

------------------------------

30(B)6 DEPOSITION OF RAMON MIGUEL TINIO VALDEPENAS

February 18, 2011

9:30 a.m.

Taken at:

Hunton & Williams
951 East Byrd Street
Richmond, Virginia

REPORTED BY:  LISA M. KULL, RPR

COOK & WILEY, INC.
Registered Professional Reporters
Post Office Box 14582
Richmond, Virginia 23221
(804) 359-1984

1      Appearances:

2              Sergei Lemberg, Esq.
               LEMBERG & ASSOCIATES, LLC
3              1100 Summer Street, 3rd Floor
               Stamford, Connecticut  06905
4              203.653.2250

5                  - and -

6              William C. Rand, Esq.
               Law Office of William C. Rand
7              228 East 45th Street, 17th Floor
               New York, New York  10017
8              212.286.1425
               attorneys, of counsel for the Plaintiff
9
               Lewis F. Powell, III, Esq. and
10             George P. Sibley, Esq.
               Hunton & Williams
11             951 East Byrd Street
               804.788.8200
12             attorneys, of counsel for Capital One Bank
               (USA) and Capital One Services, LLC
13
               Bryan C. Shartle, Esq. and
14             Michael Alltmont, Esq.
               SESSIONS, FISHMAN, NATHAN & ISRAEL, LLP
15             3850 N. Causeway Blvd.  Suite 200
               Metairie, Louisiana  70002
16             504.828.3700
               attorneys, of counsel for NCO Financial Systems
17

18                          INDEX

19                                         Page

20    Examination by Mr. Shartle              4

21    Examination by Mr. Lemberg             34

22    Re-Examination by Mr. Shartle         178

23    Re-Examination by Mr. Lemberg         181

24    Examination by Mr. Powell             184

25    Re-Examination by Mr. Lemberg         191

Page 3

EXHIBITS

NCO Exhibit No.                                                    Page

1   Notice of 30(B)(6) Deposition                                6

2   Servicing and Management Agreement between                   8
    Captial One Bank and Capital One Services, Inc.

3   Defendant Capital One Services Second                        11
    Supplemental Objections and Responses to
    Plaintiff's First Set of Interrogatories

4   Pre-Legal Notice dated October 8, 2009                       14

5   Offer 10439 Details document                                 27

6   Letter from Capital One Bank to Gareth D. Wood               76

7   Defendant Capital One Services Supplemental                  87
    Objections and Responses to Plaintiff's
    First Set of Interrogatories

8   Pre-Legal Notice dated November 9, 2009                      137

9   Pre-Legal Notice dated December 8, 2009                      140

10  E-mail:  Jason Davey, NCO 01438-01439                        163

11  Fact Sheet - Gareth D. Wood                                  179

12  Letter dated October 10, 2009 to Gareth D.                   180
    Wood from NCO Financial Systems, Inc.

13  Organizational Chart, COS-0001171-0001174                    195

1            (Whereupon, the aforementioned document was

2            marked for identification as NCO Deposition

3            Exhibit No. 5.)

4    BY MR. SHARTLE:

5        Q    These documents were produced by Capital One in

6    this case.  Have you seen these documents before?

7        **A    Yes, I have.**

8        Q    And what are these documents?

9        **A    These documents describe some of the special**

10   **offers that are available to customers meeting those**

11   **criteria to be eligible for the offer.**

12       Q    Sir, who developed this letter?

13       **A    Capital One Services LLC developed this letter.**

14            MR. LEMBERG:  Could you, please, note an

15   objection?  Which letter are we talking about?

16            MR. SHARTLE:  Fair.

17   BY MR. SHARTLE:

18       Q    I'm going to show you again what I marked as NCO

19   Exhibit 4.  Who developed the template for this letter?

20       **A    The template for the Pre-Legal Notice marked as**

21   **NCO Exhibit 4 was developed by Capital One Services, LLC.**

22       Q    Who at Capital One was involved in the

23   development of the letter?

24       **A    There was several people involved in the**

25   **development of the letter.  Primarily from two departments.**

COOK & WILEY, INC.

1    One was the strategy and analysis department within

2    collections to define the nature of the correspondence and

3    the general message to be delivered to the customer.  And a

4    second department that was involved in the creation of the

5    letter would have been the Brand Department, which would

6    have written the actual copy as well as any graphical

7    design associated with the letter.

8         Q    Was NCO involved in the development of the

9    template of this letter?

10        MR. LEMBERG:  Objection.

11        A    NCO was not involved in the development of the

12   template for this letter.

13   BY MR. SHARTLE:

14        Q    Was NCO involved in the development of this

15   letter at all?

16        A    NCO was not involved in the development of this

17   letter.

18        Q    Did NCO ask Capital One to send this letter on

19   its behalf?

20        MR. LEMBERG:  Objection.

21        A    NCO did not request Capital One to send this

22   letter on its behalf.

23        MR. POWELL:  For clarification, Mr. Shartle, was

24   your question specifically with reference to the letter

25   that was sent to Mr. Wood?  Or was it more generally with

Page 29

1    reference to the Pre-Legal Notice form which is NCO 4?

2         MR. SHARTLE:  Really I'm referring to both.  But,

3    that's a fair point.

4    BY MR. SHARTLE:

5         Q    Did NCO ask Capital One to send the specific

6    letter that we have marked as Exhibit No. 4 on its

7    behalf?

8         MR. LEMBERG:  Objection.

9         **A    NCO did not.**

10   BY MR. SHARTLE:

11        Q    Did NCO ask Capital One to use the Pre-Legal

12   Notice template as a form for sending letters to any

13   Capital One consumers?

14        MR. LEMBERG:  Objection to form.

15        **A    It did not.**

16   BY MR. SHARTLE:

17        Q    Did any other debt collector ask Capital One to

18   use the Pre-Legal Notice template form as a form letter to

19   send to Capital One consumers?

20        MR. LEMBERG:  Objection to form.

21        **A    No.  No other debt collectors made that request.**

22   BY MR. SHARTLE:

23        Q    Did Capital One send a sample of the Pre-Legal

24   Notice template form to its third-party debt collectors

25   before it deployed the use of the form?

COOK & WILEY, INC.

1    **have been printed on the letter for accounts that had been**

2    **referred to NCO.**

3    BY MR. SHARTLE:

4        Q    At the time that this letter went to printing,

5    that we've marked as NCO Exhibit No. 4, who was the

6    servicer of this account?

7        **A    At the time that this letter marked NCO Exhibit**

8    **No. 4 was produced, the servicer of the account was Capital**

9    **One.**

10       Q    Who paid for the letter that we have marked as

11   Exhibit No. 4 to be printed?

12       **A    Capital One Services, LLC paid for this letter**

13   **marked Exhibit No. 4 to be printed.**

14       Q    This form letter, this template, it is used for

15   other accounts, correct?

16           MR. LEMBERG:  Objection.  Vague.

17       Q    This form letter template is used for other

18   accounts.  And the Pre-Legal Notice letters that you send,

19   that Capital One sends on other accounts, who pays for the

20   printing of those letters?

21       **A    Capital One Services, LLC pays for the printing**

22   **of those letters.**

23       Q    And the Pre-Legal Notice letters that Capital One

24   sends, who pays for the mailing of those letters?

25       **A    Capital One Services, LLC pays for the mail of**

1   those letters.

2       Q    The letter that I have marked as NCO Exhibit No.

3   4, who paid for the mailing of that letter?

4       **A    Capital One Services, LLC paid for the mailing of**

5   **the letter marked NCO Exhibit No. 4.**

6       Q    Did NCO pay for the mailing of the letter that we

7   have marked as NCO Exhibit No. 4?

8           MR. LEMBERG:  Objection.

9       **A    NCO did not pay for the mailing of the letter**

10  **marked NCO Exhibit No. 4.**

11  BY MR. SHARTLE:

12      Q    Did NCO pay for the printing of the letter that

13  we have marked as Exhibit No. 4?

14          MR. LEMBERG:  Objection.

15      **A    NCO did not pay for the printing of the letter**

16  **marked NCO Exhibit No. 4.**

17          MR. SHARTLE:  Take a break?

18

19          (Recess.)

20

21  BY MR. SHARTLE:

22      Q    When was the first time you met me?

23      **A    The first time I met you was today.**

24      Q    Have we ever spoken on the telephone?

25      **A    We have not spoken on the telephone previously.**

1    BY MR. LEMBERG:

2         Q    Okay.  In the spring and in the fall, correct?

3         A    **That is correct.**

4         Q    Now, you were talking this morning earlier about

5    how the notice is actually sent.  Remember that

6    discussion?

7         A    **Yes.**

8         Q    And you referenced the fact that the Capital One

9    actually doesn't itself mail the notice, correct?

10        A    **Capital One pays for the printing and mailing of**

11   **the notice.**

12        Q    And it uses a third-party printer mailer of some

13   sort?

14        A    **Uses a print vendor who would physically print**

15   **and then take care of physically mailing the letters.**

16        Q    And so as a step four in the process, Capital One

17   then transmits a file to the print vendor to print

18   Pre-Legal notices.  Is that a fair general statement?

19             MR. POWELL:  Objection.  Vague.  Inconsistent

20   with the prior testimony.

21        A    **So I believe the process we had discussed was**

22   **around the placement process.  How an account is assigned**

23   **to a debt collection supplier.**

24   BY MR. LEMBERG:

25        Q    But, I just want to know, the printing of the

11/06/2009 12:31 FAX                                                          ☑001/002


**what's in your wallet?**

**PRE-LEGAL NOTICE**

October 08, 2009


DEFENDANT'S EXHIBIT

Creditor:  Capital One Bank (USA), N.A.
Account Number: ⬛⬛⬛⬛⬛4875
Balance: $1,731.95
Serviced by: CAPITAL ONE
Minimum Payment: $259.00

Dear Gareth D Wood:

Your account is seriously delinquent and meets the guidelines for legal action if payment is not made toward the amount shown above.

Lawsuits can have serious consequences. If a judgement is obtained against you, whatever legal actions are deemed advisable to enforce it will be taken*. Judgements are a matter of public record, so landlords, lenders and potential employers can see judgements against you. This could make it more difficult for you to rent an apartment, borrow money or even get a job in the future.

No decision has been made to sue you yet, so you still have options:
* You can pay $259.00 by your statement due date to bring your account current.
* Or, you can call to learn about possible flexible payment options and special offers.

To see what your options are or to make a payment, call 1-800-955-6600 or visit www.capitalone.com/solutions.

Sincerely,

Capital One Services, LLC

*Prior to any judgment, you will be notified and able to raise defenses. Our remedies will be subject to applicable property exemptions.

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

FA421-RL-0208
ABC 2415R (20080301)
FM18727

▼ PLEASE RETURN PORTION BELOW WITH PAYMENT ▼

CapitalOne                              ⬛⬛⬛⬛⬛4875⬛⬛⬛

* Moving? Change your address online or on the back.

Total enclosed        $ [          ]            * Pay online anytime - no more checks, stamps or clutter.

* Sign up at www.capitalone.com.

6183

‖⬝‖⬝‖⬝‖⬝‖⬝‖⬝‖⬝‖⬝‖⬝‖⬝‖⬝‖
Gareth D Wood

Capital One
P.O. Box 71083
Charlotte, NC 28272-1083

A706446                    COLR#358 6456 1633 2415R  07 691489 PAGE 00001 OF 00001 COLLECT 00014563


EXHIBIT
Neo  4
2/18/11  LK

1. **Who We Are and Who We Service.** Capital One Services, LLC is the servicer of your Account. We are a subsidiary of Capital One, National Association, and service the following Capital One affiliated companies:
   - Capital One Bank (USA), National Association;
   - Capital One, National Association; and
   - Capital One Auto Finance, Inc.

2. **State and Local Disclosures.** The following disclosure is required by state or local law if your Account involves a debt owed primarily for personal, family, household or other consumer purpose(s), and you receive this letter in Connecticut, the District of Columbia, Iowa, New York City, North Carolina or Vermont:

   This is an attempt to collect a (consumer) debt (claim). Any information obtained will be used for that purpose.

   The following disclosure is required by state law if your Account involves a debt owed primarily for personal, family, household or other consumer purpose(s) and you receive this letter in Iowa:

   This communication is from a debt collector.

   The following disclosure is required by state law if your Account involves a debt owed primarily for personal, family, household or other consumer purpose(s) and you receive this letter in Massachusetts:

   **NOTICE OF IMPORTANT RIGHTS: YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.**

   The terms used in this Section are defined by applicable state or local law. This is not a complete list of the rights that you might have.

3. **Bankruptcy.** If you are entitled to bankruptcy protection for your Account this letter is only for informational purposes. It is not an attempt to collect, assess or recover a debt or claim. Do not send any payments directly to us without speaking with your bankruptcy attorney or the Bankruptcy Court. If you want to contact us about your Account or your bankruptcy proceeding, please have your attorney contact us.

4. **Electronic Check Conversion.** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your deposit account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your deposit account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. Your authorization is not limited by the date on the check.

5. **Interest and Charges Continue to Accrue.** All stated amounts are owed on the date of this letter. Because interest, late charges, and other charges might change from day to day as provided in your agreement, the amount due on the day you pay us may be larger. For example, if you pay the amount stated in this letter, your Account might still have a balance after we receive your payment.

6. **Time Period for Payment or Other Action.** Unless we provide a specific date, any time period for your payment or other action begins on the date of this letter.

7. **IRS Reporting of Debt Forgiveness.** If we cancel or forgive $600 or more of principal on a debt you owe, we must provide a 1099-C tax form to you and the IRS. Please consult your tax advisor and the instructions accompanying your tax forms for more information.

8. **Credit Reporting of Your Settled Account.** If we settle your Account before it is charged off, we will charge off the remainder of your Account balance. We will then report your Account to credit reporting agencies as settled with an outstanding balance.

---

## Changing Address?

Address _____

Home Phone _____

Alternate Phone _____

E-mail Address _____

*Please print address or phone number changes above using blue or black ink.*

## Not quite ready to make payments online?

No problem. Follow these simple steps to make sure we process your payments smoothly:

- Don't staple or paper clip your check to the payment slip.

- Be sure to use the payment envelope that came with your letter. *Using a different envelope could delay processing.*

- Please don't include any additional correspondence.

- Last but not least, be sure to write your 16-digit account number on your check.

# EXHIBIT B

1

2     IN THE UNITED STATES DISTRICT COURT

3     DISTRICT OF CONNECTICUT

4

5     ------------------------------

6     RONALD SOREL, on behalf of himself
      and all others similarly situated,

7
      vs.                               CA #:  3:11-cv-00703

8
      CAPITAL ONE SERVICES, LLC, CAPITAL
9     ONE BANK (USA), N.A.,and
      MRS ASSOCIATES, INC.

10    ------------------------------

11

12

13                    DEPOSITION OF RAMON VALDEPENAS

14

15                         October 27, 2011

16                         12:30 p.m.

17

18                         Taken at:

19                    HUNTON & WILLIAMS
                       951 East Byrd Street
20                    Richmond, Virginia  23219

21          REPORTED BY:  KAREN S. INTAGLIATO, CCR

22

23                    Cook & Wiley, Inc.
                  Registered Professional Reporters
24              3751 Westerre Parkway, Suite D-1
                   Richmond, Virginia  23233
25                      (804) 359-1984

```
1    APPEARANCES:

2    Sergei Lemberg, Esquire
     LEMBERG & ASSOCIATES, LLC
3    1100 Summer Street, 3rd Floor
     Stamford, Connecticut  06905
4    (203) 653-2250
     Counsel for the Plaintiff
5
     George P. Sibley, III, Esquire
6    Lewis F. Powell, III, Esquire
     Joshua P. Hanbury, Esquire
7    HUNTON & WILLIAMS
     951 East Byrd Street
8    Richmond, Virginia  23219
     (804) 788-8200
9    Counsel for Capital One Bank (USA) and
     Capital One Services, LLC
10
     Michael Alltmont, Esquire
11   SESSIONS, FISHMAN, NATHAN & ISRAEL, LLP
     3850 N. Causeway Boulevard, Suite 200
12   Metairie, Louisiana  70002
     (504) 828-3700
13   Counsel for NCO Financial
```

14                          I N D E X

15                                                PAGE

16   RAMON VALDEPENAS

17      BY MR. LEMBERG...............................4

18      BY MR. SIBLEY..............................116

```
19

20

21

22

23

24

25
```

COOK & WILEY, INC.

```
1                        E X H I B I T S

2

3       Exhibit Number 1

4          Notice of Deposition..............................5

5       Exhibit Number 2

6          Collections Outbound Dialing.....................48

7       Exhibit Number 3

8          Pre-Legal Notice.................................62

9       Exhibit Number 4

10         TSYS Screen Shots................................28

11      Exhibit Number 5

12         Spreadsheet......................................86

13      Exhibit Number 6

14         Call Log.........................................89

15      Exhibit Number 7

16         Log..............................................94

17      Exhibit Number 8

18         Transmission Tracking Report.....................96

19      Exhibit Number 9

20         E-mails.........................................103

21      Exhibit Number 10

22         Pre-Legal Notice................................107

23

24         (Some of the exhibits were pre-marked before the deposition.)

25
```

1      Q    You don't know, do you, when Sorel's individual

2  account was actually probed, correct?

3      A    That is correct.

4      Q    All you know is the result of the probe, correct?

5      A    That is correct.

6      Q    And all you know is that the result of the probe

7  posted on the 24th, correct?

8      A    That is correct.

9      Q    By probe, you and I mean it was probed for the

10  transfer to pre-legal, correct?

11      A    That is correct.

12      Q    What criteria does the system use to determine

13  whether an account is going to be transferred to pre-legal?

14      A    My understanding of the criteria for that is there

15  are at least three data fields that are relevant to that.  One

16  is how delinquent the account is.  The second is the state in

17  which the cardholder resides or the state for the account, and

18  the third is the balance on the account.

19      Q    Why does the system care about the state and the

20  balance?

21      A    The state and the balance are used to determine

22  whether or not the account will be in a pre-legal or non

23  pre-legal customer segment.

24      Q    How does the system do that?  Does the system do that

25  -- well, before we get to how, is that -- these criteria for

1      scoring, they're included in the probe step, correct?

2          A     These criteria for review are reviewed in the probe

3      step.

4          Q     Okay.  And the criteria used to determine whether the

5      account is going to go into the pre-legal program, correct?

6          A     I believe the criteria that are used to determine the

7      account will go into pre-legal.

8          Q     So, for instance, if the account balance is less than

9      the minimum for a particular state, the account does not

10     qualify for pre-legal, but if it is more than, that box is

11     checked, so to speak?

12         A     That is correct.  The account balance must meet the

13     criteria for pre-legal treatment in the state in which it

14     resides.

15         Q     So the system doesn't decide at the probe step

16     whether somebody meets the criteria to be sued.  It just

17     decides whether the pre-legal qualification is met, correct?

18              MR. SIBLEY:  Objection, foundation.

19         A     The probe step only decides on whether the account

20     will go into the pre-legal segment or not a pre-legal segment.

21         Q     Okay.  Now, to come back for a second.  It's

22     possible, is it not, that Mr. Sorel's account was probed on the

23     23rd and the result posted on the 24th, right?

24         A     That would call for my speculation of the

25     possibility, but in the absence of certain knowledge of when

1    specifically Mr. Sorel's account was probed, it is possible

2    that the decision happened on the 23rd and was posted to the

3    screen shot we see here on the 24th.

4        Q    Following the probe step, what is the next step?

5        A    After the probe step, the next step is called QMS,

6    and that step assigns the que so to speak, Q-U-E, the que, to

7    which the account would go.

8        Q    What are the possible ques?  Can you tell me?

9        A    I don't know all of the possible ques, but, for

10   example, the QMS process is the one that decides whether or not

11   the account would be dialed by Capital One or by a third party

12   debt collection supplier.  So an example of this outcome that

13   you've inquired about is who will be calling the account.

14       Q    And did Mr. Sorel's account go through the QMS

15   process?

16       A    Yes, it did.

17       Q    How do you know it went through the QMS process?

18       A    Based on my conversation with Mr. Chapman about the

19   flow of the decisioning and transfer process, all accounts go

20   through this process.  And so Mr. Sorel's account was included

21   in the QMS process that evening going to the next day.  And the

22   outcome of that process is what determines who will be dialing

23   on the account, for example, to try to get in touch with Mr.

24   Sorel.  And the calling log that was produced for this

25   deposition indicates that the que changed for Mr. Sorel's

37

1    account.

2         Q    And how did it change?

3         A    It changed from being a Capital One que to going into

4    the MRS que.

5         Q    When did Mr. Sorel's account go through the QMS step?

6         A    Sometime between around midnight of the 23rd heading

7    into the 24th of December 2009, and 6:00 a.m. on December 24,

8    2009.

9         Q    How do you know the process, the QMS step, began at

10   midnight?

11        A    I don't know exactly when the QMS step began, but my

12   understanding how the process works is that right around that

13   time in the evening is when the decisioning for the collections

14   que begins.  So right around somewhere between those two times

15   is when a decision would have been made for Mr. Sorel's

16   account.

17        Q    Let's get more specific, because we're using terms

18   "right around" and I know that this isn't your -- that you're

19   not personally familiar with how this works.  But I still want

20   to understand what you know.

21        A    Uh-huh.

22        Q    And as far as you know, you said, I believe, earlier,

23   slightly earlier, that the process begins that evening and

24   carries over the following morning?

25        A    Uh-huh.

38

1  firm or attorney firm.

2      Q    Do you know when Mr. Sorel's account was placed with

3  an attorney firm?

4          MR. SIBLEY:  Objection as beyond the scope of the

5  notice.

6      A    I do not know.

7      Q    Now, at the time that the pre-legal notice is

8  generated, there are three criteria that you told me about.

9  The first criterion was the account has to meet the delinquency

10 criteria.  It has to be 120 days delinquent, correct?

11     A    Correct.

12     Q    The second criterion that it looks at accounts based

13 on the state of residence, correct?

14     A    Correct.

15     Q    And the third criterion is the balance, correct?

16     A    Correct.

17     Q    Those are the criteria for printing the pre-legal

18 notice, correct?

19     A    Those are the criteria for deciding whether or not an

20 account would be eligible to receive the pre-legal notice.

21     Q    So the account at that juncture isn't really being

22 selected for suit, correct?

23     A    The account -- so to clarify, if an account satisfies

24 those criteria at the time it goes through the probe process,

25 it is not being selected for a suit.  Is that what you asked

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                :

RONALD SOREL, in his own behalf and on   :
behalf of all others similarly situated,        :
                                :

             Plaintiff,       :
                                :

            v.              :     No. 3:11-cv-00703 (SRU)
                                :

CAPITAL ONE BANK (USA), N.A.,       :
CAPITAL ONE SERVICES, LLC, and     :
MRS ASSOCIATES, INC.,            :
                                :

           Defendants.      :
                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## AFFIDAVIT OF RAMON VALDEPENAS REGARDING
## SERVICING OF ACCOUNT OF RONALD SOREL

     I, Ramon Miguel Tinio Valdepenas, state that the following facts are true to the best of

my knowledge, information, and belief:

     1.     My name is Ramon Miguel Tinio Valdepenas.  I am thirty-three (33) years old

and I reside in Glen Allen, Virginia.  I am currently a Business Director for Capital One

Services, LLC ("Capital One").

     2.     Ronald Sorel opened a credit card account **********4277 with Capital One

Bank (USA), N.A. ("COB") on September 11, 2001.

     3.     Under an existing arrangement with COB, Capital One provided all account-

related functions necessary to service Mr. Sorel's account from the moment the account was

opened to the present.  These functions include transmitting monthly account statements, sending

other account-related correspondence to Mr. Sorel, responding to telephonic inquiries from Mr.

Sorel, and deciding whether to assign collection responsibilities to a third-party debt collector,

such as Defendant MRS Associates, Inc. ("MRS"). Capital One performs each of these functions for all COB credit card accounts.

4.    Sorel used his Capital One credit card to purchase goods and services. Under the terms of his cardholder agreement with Capital One, Sorel was obligated to pay back Capital One through minimum monthly payments. He failed to meet this obligation and became delinquent in his payments to Capital One in August 2009. Between August and December, 2009, Capital One sent Sorel at least three letters notifying him of his delinquent status and requesting payment.

5.    By December 21, 2009, Sorel's account was 120 days delinquent. His balance was $13,528.68.

6.    When an account becomes seriously delinquent, as was the case with Sorel's account, Capital One may assign collection responsibility for the account to a third-party debt collector. During the period when collection responsibility is assigned to the debt collector, Capital One is still performing functions in connection with the account. Capital One will continue to send statements and other correspondence to the account holder, it will monitor payment status on the account, and it will periodically assess whether collection responsibility should be returned to Capital One or transferred to another third-party debt collector.

7.    During any period when collection responsibility for an account has been transferred to a third-party debt collector, Capital One ceases all telephonic contact with the account holder. Capital One will not itself call to attempt to collect the amount due, and if the account holder calls any Capital One telephone number — i.e., the telephone number on an account statement, the telephone number on the back of the credit card, or the telephone number on a collection letter — Capital One will transfer the call to the third-party debt collector with collection responsibility for the account.

8.    If a cardholder whose account is delinquent and has been assigned to a third-party debt collector calls a Capital One customer service number:

      a.    Capital One's systems will answer the phone, and an automated message will state, "Welcome to Capital One.  Please say or enter your 16-digit account number";

      b.    After the cardholder has entered the account number, Capital One's computer system will recognize that collection responsibility for the account has been transferred to a third-party debt collector, and the call will be automatically transferred to that third-party debt collector; and

      c.    A customer service representative for the third-party debt collector will answer the call, identify the name of the collection agency, and make other disclosures required by the State and federal law, and then attempt to reach agreement on a payment plan with the cardholder.

9.    Capital One expects that, immediately upon being assigned collection responsibility for a Capital One account, a third-party debt collector will send the cardholder a written notice that identifies itself as a debt collector and contains the disclosures otherwise required by 15 U.S.C. § 1692g(a).

10.    In September 2009, Capital One began sending "Pre-Legal Notices" nearly identical to the one sent to Mr. Sorel to cardholders whose accounts were more than 120 days delinquent and whose outstanding balance exceeded Capital One's threshold for legal action if the account charged off.  Capital One serviced each of these accounts in accordance with its standard practice, but for some of these accounts, Capital One assigned collection responsibility to one of the several third-party debt collectors, including MRS, that Capital One uses.

11.    Capital One employees developed the template for the Pre-Legal Notice

internally. No third-party debt collector asked Capital One to develop the Pre-Legal Notice on its behalf. Capital One sent the Pre-Legal Notice to all account holders whose accounts were 120 days delinquent and exceeded the threshold for legal action if the account charged off. The same template was used for each such letter, regardless of whether collection responsibility remained with Capital One, was assigned to MRS, or was assigned to a different third-party debt collector.

12.     On December 23, 2009, Capital One was responsible for collection activity relating to Sorel's account. Capital One placed three calls to phone numbers for Sorel during the day on December 23, 2009, the latest of which was made at 7:51 pm EST. *See* COS-SOREL-000032-035 (Lines 1193, 1194, 1195).

13.     On December 23, 2009, Capital One's automated system initiated the process to create and disseminate the "Pre-Legal Notice" which would be sent to Sorel. That file was transmitted to Capital One's print vendor, First Data Resources, who printed the letter some time between December 24, 2009 and December 28, 2009. Sorel's Pre-Legal Notice was collected by the postal service on December 28, 2009 and delivered to Sorel's address on December 29, 2009.

14.     On December 24, 2009, Capital One's automated systems completed the transfer of collection responsibility for Sorel's account to MRS. That process began at roughly 12:00 am on December 24, 2009, when Capital One's automated systems commenced batch processing on a number of accounts, including Sorel's account, to update collection status and, where appropriate, assign accounts to third-parties for collection activity. Capital One's records indicate that, at 12:57 am on December 24, 2009, Sorel's account cycled to pre-legal status. *See* COS-SOREL-000053. This means the account had an outstanding balance that exceeded a certain threshold and was more than 120 days delinquent and thus eligible to be assigned to a third-party for late stage pre-legal collection activity. At some point between 12:57 am and 6:00

am on December 24, 2009, Capital One's automated systems created and transmitted to MRS an external agency file containing information on a number of accounts, including Sorel's account, that Capital One was assigning to MRS. Capital One's records indicate that collection responsibility for Sorel's account remained with MRS until February 21, 2011.

15.    Capital One continued to service Sorel's account after it assigned collection responsibility to MRS. On January 21, 2010 and February 21, 2010, Capital One sent Sorel account statements. On January 23, 2010, Capital One generated and later sent a Pre-Legal Notice identical in form to the Pre-Legal Notice dated December 23, 2009. And during this period, Capital One monitored Sorel's account to determine whether collection responsibility should be returned to Capital One or assigned to a third-party other than MRS.

                                        *        *        *

        I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 14, 2011

                                                    _____
                                                    ( Ramon Valdepenas

Commonwealth of Virginia       )
                               )
Goochland County               )


SUBSCRIBED AND SWORN TO before me by Ramon Valdepenas, on September 14, 2011.

                        _____
                        Notary Public in and for the Commonwealth of Virginia


My Commission Expires:

February 28, 2014
_____

┌─────────────────────────────────┐
│        LINDA L. GOODMAN          │
│         Notary Public           │
│     Commonwealth of Virginia    │
│             146118              │
│   My Commission Expires Feb 28, 2014  │
└─────────────────────────────────┘

-5-

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RONALD SOREL, on behalf             :
of himself and all others          :
similarly situated,                 :
                                    :   311-CV-00703
     Plaintiff,                     :
                                    :
   - vs -                           :
                                    :
CAPITAL ONE SERVICES,               :
LLC; CAPITAL ONE BANK               :
(USA), N.A., and MRS                :
ASSOCIATES, INC.,                   :
                                    :
     Defendants.                    :



          Oral deposition of MICHAEL MEYER,

taken at Marshall, Dennehey, Warner, Coleman &

Goggin, 1845 Walnut Street, 13th Floor,

Philadelphia, Pennsylvania 19103, on Thursday,

November 17, 2011, beginning at approximately

2:58 p.m., before Laura Wilson Kitano, Professional

Court Reporter and Notary Public.

          SUMMIT COURT REPORTING, INC.
     Certified Court Reporters & Videographers
          1500 Walnut Street, Suite 1610
          Philadelphia, Pennsylvania 19102
     424 Fleming Pike, Hammonton, New Jersey 08037
     (215) 985-2400 * (800) 447-8648 * (609) 567-3315
               www.summitreporting.com

MICHAEL MEYER

```
 1    APPEARANCES:

 2

 3    LEMBERG & ASSOCIATES
      BY:  SERGEI LEMBERG, ESQUIRE
 4    1100 Summer Street
      Stramford, CT 06905
 5    (203) 653-2250
      -- Representing the Plaintiff
 6

 7    HUNTON & WILLIAMS
      BY:  LEWIS POWELL, III, ESQUIRE
 8    951 East Byrd Street
      East Tower
 9    Richmond, VA 23219
      (804) 788-8488
10    -- Representing the Defendant, Capital One
      Services, LLC; Capital One Bank (USA), N.A.
11

12    SESSIONS, FISHMAN, NATHAN & ISRAEL, LLP
      BY:  BRYAN SHARTLE, ESQUIRE
13         MICHAEL DEL VALLE, ESQUIRE
      3850 North Causeway Boulevard
14    Metairie, LA 70002
      (504) 828-3700
15    -- Representing the Defendant, MRS Associates, Inc.

16

      ALSO PRESENT:
17    William Barnshaw

18

19

20

21

22

23

24
```

MICHAEL MEYER

```
1                          INDEX

2    WITNESS                                  PAGE

3    MICHAEL MEYER

4         By Mr. Lemberg                      4, 56

5         By Mr. Shartle                      51

6

7                        EXHIBITS

8    NUMBER          DESCRIPTION              PAGE

9    Sorel-7         Keyword Search Request   33

10   Sorel-8         Computer Screen Printout 41

11   Sorel-9         Second Request for Production

12                   of Documents, Request #4  51

13

14

15

16

17

18

19

20

21

22

23

24
```

MICHAEL MEYER

1       A.   Yes.

2       Q.   And what is the second page?

3       A.   The second page is a screen shot showing

4   the directory where that file from the previous

5   page has been archived and encrypted from our file

6   system.   And the reason that this screen shot was

7   taken is so that you could see that the time and

8   date on the file matched that of the actual file

9   that came over in the previous screen shot.

10      Q.   Okay.   So, when you said the file came

11  over, that means that on December 24th, 2009, MRS's

12  computer system went and got the file from Capital

13  One, correct?

14      A.   Yes.

15      Q.   This doesn't reflect when Capital One

16  uploaded the file to the computer, does it?

17      A.   No.

18      Q.   And by "this," I mean, nothing on Sorel-8

19  speaks to the date and time of which Capital One

20  uploaded the file to the computer designated for

21  transferring files between Capital One and MRS,

22  correct?

23      A.   Yes.

24      Q.   Okay.   And you can't tell by looking at

MICHAEL MEYER

1    Sorel-8, can you, whether Capital One uploaded that

2    file on the 23rd or the 24th?

3        A.   No.

4        Q.   It could have been either, based on --

5    just based on Sorel-8, correct?

6        A.   Yes.  There's nothing here that has

7    anything to do with Capital One other than the file

8    name.  I can tell you that almost always the file

9    name is reflective of the date the file itself was

10    created.

11        Q.   Who creates the file name?

12        A.   Capital One.

13        Q.   And when is the name created?

14        A.   I'm not sure, but I would say generally

15    the file name is created seconds before the actual

16    file itself is being generated or billed.

17        Q.   Now, in what point in time in the life of

18    the transfer of the account did MRS begin receiving

19    phone calls?

20            MR. SHARTLE: Objection.  Vague and

21            ambiguous.

22            MR. POWELL: Vague question.

23            THE WITNESS:  I don't understand.

24    BY MR. LEMBERG:



nZip Pro - 2009.zip

Actions   View   Jobs   Options   Help

Open   Favorites   Add   Extract   Encrypt   View   CheckOut   Wizard   View Style

| Name | Type | Modified | Size | Ratio | Pack |
|---|---|---|---|---|---|
| 191231_20091231_023957_capone_agency2112309.dat* | DAT File | 12/31/2009 7:56 AM | 114,950,815 | 88% | 13,677,8 |
| 191230_20091230_023642_capone_agency2112309.dat* | DAT File | 12/30/2009 8:04 AM | 113,711,538 | 88% | 13,532,2 |
| 191229_20091229_031858_capone_agency2112909.dat* | DAT File | 12/29/2009 8:00 AM | 112,195,096 | 88% | 13,270,9 |
| 191228_20091228_022913_capone_agency2112809.dat* | DAT File | 12/28/2009 7:49 AM | 111,179,332 | 88% | 13,191,9 |
| 191224_20091224_030744_capone_agency2112409.dat* | DAT File | 12/24/2009 7:33 AM | 111,948,359 | 88% | 13,328,9 |
| 191223_20091223_032253_capone_agency2112309.dat* | DAT File | 12/23/2009 7:49 AM | 112,151,872 | 88% | 13,361,7 |
| 191222_20091222_034503_capone_agency2112209.dat* | DAT File | 12/22/2009 8:05 AM | 112,317,564 | 88% | 13,376,6 |
| 191221_20091221_024351_capone_agency2112109.dat* | DAT File | 12/21/2009 7:22 AM | 111,022,645 | 88% | 13,145,4 |
| 191218_20091218_063313_capone_agency2111809.dat | DAT File | 12/18/2009 7:37 AM | 112,009,593 | 88% | 13,266,6 |
| 191217_20091217_033703_capone_agency2111709.dat | DAT File | 12/17/2009 7:26 AM | 111,725,035 | 88% | 13,277,4 |
| 191216_20091216_032651_capone_agency2111609.dat | DAT File | 12/16/2009 8:59 AM | 112,345,380 | 88% | 13,374,2 |
| 191216_20091216_032651_capone_agency21.dat* | DAT File | 12/16/2009 8:59 AM | 112,345,380 | 88% | 13,374,2 |
| 191215_20091215_033756_capone_agency2111509.dat | DAT File | 12/15/2009 7:49 AM | 112,396,808 | 88% | 13,368,3 |
| 191214_20091214_030038_capone_agency2111409.dat | DAT File | 12/14/2009 7:45 AM | 110,644,435 | 88% | 13,111,9 |
| 191211_20091211_032047_capone_agency2111109.dat | DAT File | 12/11/2009 7:49 AM | 112,268,937 | 88% | 13,332,3 |
| 191210_20091210_030455_capone_agency2111009.dat | DAT File | 12/10/2009 8:06 AM | 105,709,695 | 88% | 12,570,0 |
| 191210_20091210_030455_capone_agency21.dat | DAT File | 12/10/2009 8:06 AM | 105,709,695 | 88% | 12,570,0 |

Total 277 files, 20,212,687KB

ed 1 file, 109,325KB

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RONALD SOREL, on behalf          :
of himself and all others       :
similarly situated,             :
                                 :  311-CV-00703
     Plaintiff,                  :
                                 :
     - vs -                      :
                                 :
CAPITAL ONE SERVICES,            :
LLC; CAPITAL ONE BANK            :
(USA), N.A., and MRS             :
ASSOCIATES, INC.,                :
                                 :
     Defendants.                 :

          Oral deposition of WILLIAM BARNSHAW,

taken at Marshall, Dennehey, Warner, Coleman &

Goggin, 1845 Walnut Street, 13th Floor,

Philadelphia, Pennsylvania 19103, on Thursday,

November 17, 2011, beginning at approximately

10:47 a.m., before Laura Wilson Kitano,

Professional Court Reporter and Notary Public.

SUMMIT COURT REPORTING, INC.
Certified Court Reporters & Videographers
1500 Walnut Street, Suite 1610
Philadelphia, Pennsylvania 19102
424 Fleming Pike, Hammonton, New Jersey 08037
(215) 985-2400 * (800) 447-8648 * (609) 567-3315
www.summitreporting.com

WILLIAM BARNSHAW

```
1    APPEARANCES:

2

3    LEMBERG & ASSOCIATES
     BY:  SERGEI LEMBERG, ESQUIRE
4    1100 Summer Street
     Stramford, CT 06905
5    (203) 653-2250
     -- Representing the Plaintiff
6

7    HUNTON & WILLIAMS
     BY:  LEWIS POWELL, III,. ESQUIRE
8    951 East Byrd Street
     East Tower
9    Richmond, VA 23219
     (804) 788-8488
10   -- Representing the Defendant, Capital One
     Services, LLC; Capital One Bank (USA), N.A.
11

12   SESSIONS, FISHMAN, NATHAN & ISRAEL, LLP
     BY:  BRYAN SHARTLE, ESQUIRE
13        MICHAEL DEL VALLE, ESQUIRE
     3850 North Causeway Boulevard
14   Metairie, LA 70002
     (504) 828-3700
15   -- Representing the Defendant, MRS Associates, Inc.

16

17   ALSO PRESENT:
     Michael Meyer

18

19

20

21

22

23

24
```

WILLIAM BARNSHAW

```
1                          INDEX

2    WITNESS                                    PAGE

3    WILLIAM BARNSHAW

4          By Mr. Lemberg                      4, 139

5          By Mr. Shartle                    138, 142

6          By Mr. Powell                         143

7

8                         EXHIBITS

9    NUMBER           DESCRIPTION                PAGE

10   Sorel-1          Notice of Deposition         6

11   Sorel-2          Revised and Restated Statement

12                    of Work No. 001             48

13   Sorel-3          Pre-Legal Notice            80

14   Sorel-4          4/24/09 and 4/23/09 E-mails  97

15   Sorel-5          MRS Letter to Ronald Sorel  112

16   Sorel-6          Ronald Sorel Account

17                    Information                133

18

19

20

21

22

23

24
```

**WILLIAM BARNSHAW**

1        A.    It was a Pre-Legal program.  So, Capital

2   One identified these accounts that were Pre-Legal.

3        Q.    And what does that mean?  What did that

4   mean to MRS?

5        A.    Actually, I believe it's probably in the

6   statement of work, if I may look.

7        Q.    Sure.

8        A.    Reference Page 215, Bullet 1.  May I read

9   the paragraph?

10        Q.    Sure.

11        A.    "Pursuant to Article 3.2 of Exhibit A2 and

12   the agreement and in accordance with all

13   requirements of Exhibit A2 and the agreement,

14   supplier shall provide services for specific

15   accounts, as may be provided by Capital One in the

16   Pre-Legal program of collections.  The Pre-Legal

17   program consists of accounts where the purpose is

18   liquidation instead of returning to current status

19   and out of collections.  These accounts typically

20   are late stage, highly delinquent, or those whose

21   history demonstrates behaviors indicating a high

22   level of charge-off risk.  Accounts typically enter

23   the Pre-Legal program at 120 days delinquent and

24   remain until they are brought current under the

**WILLIAM BARNSHAW**

1    account credit limit and zero days past due, or

2    exceed 170 days delinquent.  Accounts in which

3    become current or exceed 179 days delinquent are

4    transferred from the Pre-Legal program and will be

5    withdrawn from the supplier.  Supplier shall call

6    Pre-Legal program account holders on a third party

7    basis; supplier shall attempt to collect as much of

8    the account holder's outstanding balance as

9    possible to minimize the amount that is charged

10   off.  Supplier may suggest during the call with the

11   account holder that a legal action may be pursued

12   if a payment is not secured on the call.  All

13   Pre-Legal program accounts at charge-off will be

14   reviewed for possible legal action in Capital One's

15   post-charge-off legal network."

16        Q.    Okay.  So, let me ask you the same

17   question again.  What do the words "Pre-Legal" mean

18   to you?

19        A.    They mean to me this account has been

20   identified as one that Capital One is going to

21   review for potential litigation.

22        Q.    Do you know -- did MRS have any

23   understanding as to the length of time between the

24   placement of the account with MRS and the time that