## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD SOREL, on behalf of himself and all others similarly situated, Plaintiffs, | |
| v. | No. 3:11-cv-703 (SRU) |
| CAPITAL ONE SERVICES, LLC, CAPITAL ONE BANK (USA), N.A., and MRS ASSOCIATES, INC., Defendants. | |

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ronald Sorel (Sorel or "Plaintiff") brought this action alleging violations of the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Connecticut

Creditors' Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-645, *et seq.*, and civil

conspiracy after he received two separate letters regarding his Capital One credit card account.

The first was a letter captioned "Pre-Legal Notice" from Capital One Services, LLC ("COS"),

dated December 23, 2009 (the "Pre-Legal Notice").  The second was a letter from MRS

Associates, Inc. ("MRS" or "Defendant"), dated December 28, 2009 (the "MRS Letter").

Plaintiff alleged both letters were unlawfully deceptive under various theories and sought to

assert his claims on a class-action basis.

Plaintiff subsequently withdrew all claims against Capital One Bank (USA), N.A.

("Capital One Bank") and COS, leaving MRS as the sole remaining defendant (docs. # 77 and #

78).  Plaintiff also withdrew his claims against MRS arising out of the Pre-Legal Notice, as well

his CCPA and civil conspiracy claims, leaving only his FDCPA claims arising out of the MRS

Letter (doc. # 111).

MRS now moves for summary judgment on the remaining claims.  For the reasons that follow, MRS's motion (doc. # 79) is GRANTED.  As a result, Plaintiff's cross-motion for summary judgment (doc. # 86) and motion for class certification (doc. # 90) are DENIED as moot.

## I.  Background

The following facts are not in dispute, unless otherwise noted.[1]

Ronald Sorel opened a credit card account with Capital One Bank in September 2001.  COS, an affiliate of Capital One Bank, provided all of the necessary support for the servicing of Sorel's account.  Defendant MRS, a third-party debt collector, provided debt collection services for COS during the relevant period.

### A.  The "Pre-Legal Notice"

By December 2009, Sorel's account had become seriously delinquent with a total unpaid balance of $13,528.68.  As a result of the delinquency, COS mailed a letter, the "Pre-Legal Notice," to Sorel's home address.  The letter, which appeared on Capital One letterhead and listed Capital One Bank as the creditor, informed Sorel that his account was delinquent and requested a minimum payment of $1,964.00.  *See* DSF, at ¶¶ 2-6.  In relevant part, the Pre-Legal Notice provided:

> Your account is seriously delinquent and meets the guidelines for legal action if payment is not made toward the amount above.
>
> Lawsuits can have serious consequences.  If a judgment is obtained against you, whatever legal actions are deemed advisable to enforce it will be taken.
>
> Judgments are a matter of public record, so landlords, lenders and potential employers can see judgments against you  This could make it more difficult for you to rent an apartment, borrow money or even get a job in the future.

---

[1] The facts are taken from Sorel's Local Rule 56(a) Statements in Opp'n to Summ. J. and in Supp. of Pl.'s Cross-Mot. for Summ. J. (doc. # 86) (cited herein as "PSF"), as well as MRS's Local Rule 56(a) Statement of Uncontested Material Facts (doc. # 79) (cited herein as "DSF").

No decision has been made to sue you yet, so you still have options:

- You can pay $1,964.00 by your statement due date to bring your account current.

- Or you can call to learn about possible flexible payment options and special offers.

PSF, Ex. A (Pre-Legal Notice).

The Pre-Legal Notice was based on a template generated by an automated system COS uses to track and service delinquent accounts. Before the Pre-Legal Notice is sent to a customer, COS's computer system probes its files to determine which unpaid accounts will be designated as part of the "pre-legal segment" based on certain objective criteria. *See* PSF, Ex. C (Valdepenas Dep.), at 57. According to COS Representative Ramon Valdepenas, the probe is designed to identify "customers who meet these guidelines for legal action if they default" and "evaluat[e] the account for placement at a third party debt collection agency," such as MRS. *Id.* at 77. Thus, at the time the Pre-Legal Notice is printed and mailed, the account has been placed in the "pre-legal" program, but it "has not been placed with a law firm." *Id.* at 73.

On December 23, 2009, COS's computer system probed Sorel's account, found it met the guidelines for the "pre-legal" program, and initiated the process to mail the Pre-Legal Notice to Sorel's address. At the same time, the system automatically referred the account to a third-party debt collector—here, MRS—for handling. By the early morning of December 24, 2009, MRS received the electronic referral and took over collection efforts for the account.[2]

B.    The "MRS Letter"

---

[2] To be clear, Plaintiff has voluntarily withdrawn all claims relating to the Pre-Legal Notice. The notice is relevant to this case only insofar as it provides context for the MRS Letter and the circumstances under which MRS received Sorel's account for collection.

A few days later, Sorel received another letter concerning his Capital One account—this time from MRS.  The "MRS Letter," dated December 28, 2009, stated in relevant part:

> At this point in time, your account has been pre-qualified by Capital One as lawsuit eligible.  If we do not hear from you regarding this important business matter, your account may be subject to litigation.  If this were to occur, your account may incur additional fees and penalties if allowed under the state law of your jurisdiction.

PSF, Ex. D (MRS Letter).  The MRS Letter also contained mandatory protective notifications, advising Sorel of his right to verify and/or dispute the debt:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

*Id.*

MRS's representative, William Barnshaw, testified that MRS created this letter based on the "Statement of Work," a written agreement between COS and its third-party debt collectors, which governed the operations of the "pre-legal program of collections."  *See* PSF, Ex. B (Barnshaw Dep.), at 61.  The Statement of Work provided that:  (1) COS accounts would enter the pre-legal program at 120 days' delinquency; (2) if the account remained unpaid after 179 days, the account would be withdrawn from MRS and referred back to COS for further action; (3) MRS may suggest during collection calls that legal action may be pursued if a payment is not secured on the call; and (4) all "Pre-legal accounts at charge off will be reviewed for possible legal action in Capital One's post-charge-off legal network."  *Id.* at 61-62.

According to Plaintiff, at the time when letters like the MRS Letter are sent, delinquent accounts, though designated by COS as "pre-legal" accounts, remain stagnant for six months before actually being placed with an attorney for review for possible suit.  *See* PSF, at ¶ 28-33 (citing Valdepenas Dep.); Pl.'s Mem. of Law in Opp'n to Summ. J. (doc # 86), at 9-10.[3] Moreover, formal legal action does not begin until an account is actually charged-off, at which time the account is withdrawn from MRS and sent to Capital One's "post charge off legal network."  PSF, at ¶ 17.  Because Sorel's account was not "charged off" at the time of the MRS Letter, Plaintiff contends that it was not yet possible to review his account for suit.  *See* Pl.'s Sur-Reply in Opp'n to Summ. J. (doc. # 116), at 1-2.

C.   Plaintiff's Claims under the FDCPA

Plaintiff's Amended Complaint originally asserted myriad grounds for relief, but because Sorel has withdrawn all claims pertaining to the Pre-Legal Notice, as well as his CCPA and civil conspiracy claims,[4] only the FDCPA claims pertaining to the MRS Letter remain (*see* doc. # 111).

_____

[3] Once an account is placed with MRS for collection, it "remains with MRS for two (2) months in the Pre-Legal Program."  PSF, at ¶ 31 (citing Valdepenas Dep. (10/27/11), at 77-78). If the account is not paid within that two month period, it is returned to Capital One and it is then "four (4) months before the account, if eligible, could be placed with a law firm and the decision to sue or not to sue is actually made."  *Id.* ¶¶ 32-33.

[4] Even if Sorel had not withdrawn those claims, they would not have survived summary judgment.  First, MRS correctly points out that for the FDCPA's prohibitions on communication to be applicable, the communication must be from a *debt collector*.  *See Alibradni v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 85 (2d Cir. 2003) ("[T]he FDCPA subjects third-party *debt collectors* to limitations on the content and nature of their correspondence with debtors") (emphasis added).  The Pre-Legal Notice is a communication from Capital One, a creditor, and not MRS, a debt collector. The Second Circuit's recent decision in *Rogers v. Capital One Servs.*, 2011 WL 5829688 (2d Cir. 2011), foreclosed Plaintiff's previously asserted theories for holding Capital One liable as a debt collector under the FDCPA.  Second, Sorel's CCPA claims against MRS would fail because the CCPA prohibits certain actions against creditors, not debt collection agencies.  *See* Conn. Gen. Stat. § 36s-645, *et seq.*  MRS is a debt collection agency, not a

Sorel alleges the MRS Letter violates two different provisions of the FDCPA:  (1) section 1692e; and (2) section 1692g.  Ultimately, however, all of his claims rise or fall together depending on whether the following statement from the MRS Letter is false, deceptive or misleading: "[Y]our account has been *pre-qualified by Capital One as lawsuit eligible*.  If we do not hear from you regarding this important business matter, *your account may be subject to litigation*."  PSF, Ex. D (MRS Letter) (emphasis added).  Plaintiff argues that this language (1) violates section 1692e by (i) misrepresenting Sorel's account status as "lawsuit eligible," and (ii) falsely threatening to file suit (Counts X, XI and XII[5]); and (2) violates section 1692g(b) by "overshadowing" mandatory protective notifications, including the right to verify the debt and the right to dispute it, with urgent or otherwise threatening language (Count VIII).[6]

MRS moves for summary judgment on all remaining claims (doc. # 79).  In support, MRS argues that, in accordance with the FDCPA, the MRS Letter:  (1) truthfully advised Sorel that his account had been designated as lawsuit eligible and that failure to pay "may" result in litigation; (2) did not threaten immediate legal action; and (3) neither overshadowed nor contradicted the 30-day verification notice.

## II.   Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

creditor.  Finally, civil conspiracy, as a byproduct of the unsupported FDCPA and CCPA claims, would also fail because "civil conspiracy is not an independent cause of action" and needs an underlying claim.  *See Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 113 (D. Conn. 2010).

[5] To avoid any confusion, I identify each count using the numbering found in the First Amended Complaint (doc. # 29).

[6] Sorel also seeks to certify a class of all similarly-situated consumers who received the same, allegedly misleading letter from MRS.  *See* Mot. for Class Certification (doc. # 90).  He

R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

claims statutory and actual damages, as well as attorneys' fees and costs.

Factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 247-48.  To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate.  *Celotex*, 477 U.S. at 322.  In such a situation, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim).  In short, if there is no genuine issue of material fact, summary judgment may enter.  *Celotex*, 477 U.S. at 323.

## III.    Discussion

### A.    The FDCPA and the "Least Sophisticated Consumer" Standard

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to [en]sure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"  *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 120 (2d Cir. 2011) (quoting 15 U.S.C. § 1692(e)).  The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights."  *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001).

In light of these purposes, and to protect "the gullible as well as the shrewd," the Second

Circuit evaluates FDCPA violations from the perspective of "the least sophisticated consumer." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008).  This standard recognizes that "consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes," but at the same time "carefully preserve[s] the concept of reasonableness."  *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir. 1993).  Because the standard is objective, the least-sophisticated-consumer test shields debt collectors from liability based on "unreasonable constructions of their communications."  *Id.*  Further, "the Second Circuit has indicated that the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law because the standard is an objective one." *Berger v. Suburban Credit Corp.*, 2006 WL 2570915, at *3 (E.D.N.Y. Sept. 5, 2006) (citing *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237-38 (2d Cir. 1998)).

As noted above, Sorel alleges the MRS Letter violates two different provisions of the FDCPA:  (1) section 1692e; and (2) section 1692g.  I divide my analysis accordingly.

B.    Section 1692e Liability (Counts X, XI & XII)

Section 1692e of the FDCPA broadly prohibits the "use of any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Specifically, sections 1692e(2)(A) and (10) proscribe false representations of "the character, amount, or legal status of any debt . . . [and, inter alia,] the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  *Id.* §§ 1692e(2)(A) and (10).  Similarly, section 1692e(5) forbids the threat of legal action that cannot be legally taken or is not intended to be taken.  *Id.* § 1692e(5).   In assessing claims of deception, courts must consider the "clear import of the language, taken as a whole[.]"  *Piples v. Credit Bureau of Lockport*, 886 F.2d 22, 25 (2d Cir.

1989).

Sorel alleges two separate claims under section 1692e:  (i) a claim for false statement or false characterization of the account as "lawsuit eligible" in violation of sections 1692e(2)(A) and (10); and (ii) a claim of false threat of litigation in violation of sections 1692e(5) and 1692e(10).  I address each claim below.

1.   *False Statement/False Characterization Claim*

First, Sorel claims the MRS Letter falsely and deceptively stated that his account was "pre-qualified by Capital One as lawsuit eligible."  He argues this statement was "false" and "deceptive" because COS would not place accounts with an attorney until six-months after MRS sent the letter, and MRS knew this to be the practice.  Thus, in Plaintiff's view, the letter violates sections 1692e(2)(A) and (10).[7]  *See* Pl.'s Mem. of Law in Opp'n to Summ. J., at 8-11; 16-17.  I disagree.

Plaintiff's false statement/false characterization claim fails as a matter of law because the undisputed facts reveal that COS had, in fact, probed Sorel's account and designated his account for the pre-legal program—a program in which all accounts were subject to potential litigation upon default.  As part of the evaluation process for the pre-legal program, COS looked at the length of delinquency, the balance owed, and the consumer's state of residence—factors that bore directly on Capital One's ability to file suit, if necessary.  *See* PSF, Ex. C (Valdepenas Dep.), at 35.  Based on those criteria, Sorel's account met Capital One's threshold for legal action upon default, and the account was placed in the "pre-legal" program for that very reason.

---

[7] In his First Amended Complaint, Sorel also claimed that the MRS Letter "falsely represented that Sorel may be subject to unspecified additional 'fees and penalties.'"  *See* Am. Compl., at ¶ 120.  However, because Sorel does not address that aspect of the claim in any way in his briefs, I assume he has abandoned it.

Thus, the letter does not "falsely" characterize the status of Sorel's account: the account was indeed "pre-qualified" and "eligible" for legal action if the account was ultimately charged-off.[8]

Moreover, the letter's factually-accurate characterization would not otherwise act to deceive or mislead the consumer. *Cf. Steele v. I.C. Sys.*, 1987 WL 124017, at *1 (D. Conn. Mar. 30, 1987) (stating that a "statement which is literally true may, nonetheless, be unlawfully deceptive"). Even to the least sophisticated, there is nothing "deceptive" or "misleading" about using the phrase "pre-qualified" as "lawsuit eligible" to refer to an account that had been probed and designated for a pre-legal program in which all accounts were subject to legal action if they defaulted. Thus, Plaintiff's claims under section 1692e(2)(A) and (10) fail as a matter of law.

2.   *False Threat Claim*

Plaintiff also claims that the MRS Letter violates sections 1692e(5) and (10)[9] by falsely threatening imminent legal action. This claim is based on the same language from the MRS Letter: "[Y]our account has been pre-qualified by Capital One as lawsuit eligible. If we do not hear from you . . . your account may be subject to litigation." Because COS typically did not place an account with an attorney until six months after the account was referred MRS, Plaintiff argues the MRS letter falsely threatens imminent litigation when, in fact, no such action was intended. Although it poses a closer question, Plaintiff's false threat claim also fails as a matter

---

[8] *See* DSF, Ex. C (Valdepenas Aff.), at ¶¶ 5, 10-11. ("Plaintiff's account was more than 120 days delinquent when placed with MRS, and was part of a batch of accounts in the Pre-Legal Program whose balance exceeded COS' threshold for legal action if the account charged-off"); *see also* Barnshaw Dep., at 61-62 ("MRS reasonably believed Plaintiff's account was subject to litigation, as the contract between MRS and COS provides all Pre-Legal Program Accounts that charge off will be reviewed for possible legal action in Capital One's post charge off legal network.").

[9] Although the First Amended Complaint appears to allege that the "false threat" of litigation violated sections 1692e(2), (5) and (10), Sorel, in his brief, only argues the "false threat" claim under section 1692e(5). *See* Pl.'s Mem. of Law in Opp'n to Summ. J., at 11-16.

of law:  even to the least sophisticated consumer, the MRS letter warned that legal action was

merely *possible*, not imminently forthcoming.

Section 1692e(5) prohibits a debt collector from "threat[ening] to take any action which

cannot legally be taken or is not intended to be taken."  15 U.S.C. § 1692e(5).  Courts look to the

content of the communication, taken as a whole, to determine whether "the clear import of the

language" threatens that "legal action has already been or is about to be initiated and can be

averted from running its course only by payment."  *Pipiles*, 886 F.2d at 25; *see also Bentley v.*

*Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (finding false threat of litigation

where the "least sophisticated consumer would interpret . . . language to mean that legal action

was authorized, likely and imminent").

In analyzing false threat claims, courts have explained that "even where communications

specifically refer to legal action, a threat does not exist where the references are couched in terms

of mere possibility."  *Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 274 (D. Conn.

2007); *see also Madonna v. Acad. Collection Serv., Inc.*, 1997 WL 530101, at *1-2 (D. Conn.

Aug. 12, 1997) (holding letters describing possibility of initiation of legal action and possible

consequences of litigation were not threats, but merely communicated that litigation was one

possible course of action).

In *Madonna*, the court reviewed the following relevant language from a defendant's

collection letter:

> [I]t is our intent to close our files and inform our client that you have refused to
> cooperate.  Our client may choose to pursue legal action.  If they proceed they
> will ask that all fees and court costs, plus interest be added to your balance.

The court held that the phrase "*may* choose to pursue legal action" was "far from threatening

legal action, [but] indicate[d] that legal action is an option available to the creditor, who may

indeed choose to take advantage of it." *Madonna*, 1997 WL 530101, at *7. Other courts within this Circuit agree. *See Knowles v. Credit Bureau of Rochester*, 1992 WL 131107, at *1-2 (W.D.N.Y. May 28, 1992) (holding that the statement, "failure to pay will leave our client with no choice but to consider legal action" did not violate section 1692e(5) by threatening legal action, because "at most, the language . . . threatened that the creditor will have to consider legal action" and therefore "no action of any kind is threatened by defendant collection agency"); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726-27 (D. Conn. 1990) (holding that the statement, "legal action will be recommended to the creditor" did not violate section 1692e(5) because it did not threaten imminent legal action); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 178 (W.D.N.Y. 1988) (holding letter stating that collector had "no choice but to advise" the creditor that "legal action may be necessary" did not violate section 1692e). Thus, the "least sophisticated consumer, when explicitly told that litigation is merely being considered as an option, cannot reasonably believe that litigation is authorized and rapidly forthcoming, particularly where the party making the communication is not an attorney." *Gervais*, 479 F. Supp. 2d at 275 (stating that letter's source may be determinative as to existence of a threat, especially if it purports to be from attorney). These same principles are reflected in the very cases Plaintiff relies upon.

First, Sorel cites *Pipiles* to argue that the offending communication there, which the Second Circuit held violated the FDCPA, is akin to the content of the MRS Letter here. The differences, however, are clear. The *Pipiles* Court reviewed the following relevant language from a defendant's collection letter, entitled the "48 HOUR NOTICE:"

> Notice is Hereby Given That This Item Has Already Been Referred For Collection Action . . . We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full . . . Pay This Amount Now If Action Is To Be Stopped.

*Pipiles*, 886 F.2d at 24.  Unlike the MRS Letter, the letter in *Pipiles* indicated that the plaintiff's account had *already* been referred for some form of legal action, and used the word "will" instead of "may" when referring to actions yet to be taken.  *Id.* at 26.  Further, the language in *Pipiles* conveyed a sense of urgency and immediacy by giving the plaintiff a finite 48-hour window in which to avoid the impending legal action by remitting payment.  *Id.*  Here, in contrast, no such urgency and immediacy is expressed or implied.  Thus, although the least sophisticated consumer reading the language used in *Pipiles* might conclude that some type of legal action was imminent or had already begun, the same cannot be said of language used here. Moreover, it bears mentioning that the court in *Piples* determined that the threat was, in fact, utterly false:  the defendant admitted at trial that it routinely would take no further action on debts of that size other than to "try to contact by phone."  *Id.* at 25-26.  Here, however, the undisputed facts reveal that COS would indeed pursue litigation on delinquent accounts if they were ultimately charged-off.

Second, Sorel relies on *Rosa v. Gaynor*, 784 F. Supp. 1 (D. Conn. 1989), and *Russey v. Rankin*, 911 F. Supp. 1449 (D.N.M. 1995), to argue that, even when couched in conditional language, courts find threats of litigation violative of section 1692e(5).  Again, his reliance is misplaced.

In *Rosa*, Judge Cabranes held the phrase, "we may be forced to proceed with a lawsuit," was a threat to file suit.  *Rosa*, 784 F. Supp. at 4.  However, unlike the MRS Letter at issue here, the offending communication in *Rosa* was from an *attorney*.  *Id.* at 2.  As the Court pointed out, "[a]buses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action. . . .  A debt collection letter on an attorney's letterhead conveys authority and credibility."  *Id.* at 5 (quoting

*Crossley v. Lieberman,* 868 F.2d 566, 570 (3d Cir. 1989)); *see also Gervais*, 479 F. Supp. 2d at 275 ("In cases where the likelihood of legal action is not clear from the language, the letter's source can be determinative, especially if it purports to be from an attorney").  Here, the letter was sent not by an attorney, but by a debt collector (i.e., MRS), and specifically stated that "[t]his communication is from a debt collection agency."  PSF, Ex. D (MRS Letter).  Nothing about the MRS letter suggested, even to the least sophisticated, that its author was a member of the Connecticut bar, empowered to file suit at any moment.

Similarly, in *Russey*, the Court held that a letter stating "[w]e have the legal right to file a lawsuit on the claim within the 30 day period" and "you should know that the lawsuit could result in your paying our costs of filing and service of process" was a threat of legal action. *Russey*, 911 F. Supp. at 1454.  However, the letter in *Russey*, like the letter in *Rosa*, was purported to be from an attorney and advised the debtor to send payment directly to his law office within five days.  *Id.* at 1452-53.  The MRS Letter, in contrast, was never cloaked with the legal credibility and sense of urgency that a lawyer's letter provides.

Lastly, Sorel strives mightily to analogize the present case to *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128 (E.D.N.Y. 2007)—the only case that is arguably helpful to his position.  In *Dewees*, the Court held, on a motion for judgment on the pleadings, that the defendant's letter advising the debtor that his "past due contract is currently being reviewed for potential litigation" and that "[t]his office may use any legal remedies permitted by law, most notably, commencing a legal action in order to obtain and enforce a court ordered judgment" raised a plausible claim for false threat of litigation.  *Id.* at 130-35.  Although the letter in that case used conditional language, stating that the collector "*may* use any legal remedies," the *Dewees* Court was troubled by the juxtaposition of that non-offending phrase with more urgent

language stating the account was "*currently* being reviewed for potential litigation."  *Id.* at 136 (emphasis added).  While noting that the case was a "close one," the Court concluded that "when language that litigation *may* be brought is coupled with some other suggestion that litigation is imminent, the plaintiff has stated a claim that the letter falsely implies urgency."  *Id.*

Sorel seizes on this passage from *Dewees* to argue that whenever "conditional language is joined by <u>something more</u>, something that represents steps have been taken toward litigation, a least sophisticated consumer will interpret the letter as a threat of suit."  Pl.'s Sur-Reply in Opp'n to Summ. J. (doc. # 116), at 5 (emphasis in original).  Applying this standard, Plaintiff contends the MRS letter combines, as the letter did in *Dewees*, a statement that litigation "*may*" be brought with "something more": namely, that Sorel's account had been "pre-qualified" as "lawsuit eligible."  *Id.*  Moreover, Plaintiff argues that because Sorel received the MRS Letter—informing him that his account had been "prequalified by Capital One as lawsuit eligible"—after having read the Pre-Legal Notice—stating his account "meets the guidelines for legal action"—he would naturally assume that something had changed for the worse.  *Compare* PSF, Ex. D (MRS Letter), *with* PSF, Ex. A (Pre-Legal Notice).  In Sorel's view, MRS had the Pre-Legal Notice in mind[10] when drafting its letter and capitalized on the difference in tone between the phrases "meets the guidelines for legal action" and "pre-qualified . . . as lawsuit eligible."  Relying heavily on *Dewees*, Plaintiff argues that these facts, taken as a whole, establish the existence of a subtle, but cleverly deceptive scheme to extract payment in violation of section 1692e(5).

I believe the proverbial "least sophisticated consumer" deserves more credit than Plaintiff's expansive reading of *Dewees* allows.  *Dewees* emphasized the subtleties of language,

---

[10] While the evidence is not overwhelming, the record does indicate that Capital One's debt collection suppliers—such as MRS—had access to a sample Pre-Legal Notice and may have been aware of its content.  *See* Valdepenas Dep. (02/18/11), at 30.

probing the nuances of context and tone, but it also emphasized *reasonableness*, recognizing that

exegesis under the least-sophisticated-consumer test does not involve abandoning common

sense. *See Dewees*, 506 F. Supp. 2d at 132 (citing *Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d

150, 156 (E.D.N.Y. 2005), for the proposition that the least-sophisticated-consumer standard

"protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection

notices."); *see also Clomon*, 988 F.2d at 1319 ("[C]ourts have consistently applied the least-

sophisticated-consumer standard in a manner that protects debt collectors against liability for

*unreasonable* misinterpretations of collection notices.") (emphasis added).  As noted above,

other cases within this Circuit, such as *Madonna* and *Riveria*, hold that statements warning

debtors that legal action "may" occur are not threats, but statements of mere possibility—a

distinction understood by even the most credulous consumers among us.  *See Madonna*, 1997

WL 530101, at *7; *Riveria*, 682 F. Supp. at 178.  *Dewees* never disputed this basic premise, but

instead stressed that no one phrase should be read in artificial isolation.  Thus, properly

construed, *Dewees* stands for the rather unremarkable proposition that *context matters*:  the use

of conditional language in one phrase can be negated by the use of urgent language in another.

     Here, nothing in the MRS Letter conveys the urgency or immediacy that concerned the

Court in *Dewees*.  Defendant's statement that Sorel's account "has been pre-qualified by Capital

One as lawsuit *eligible*" and "[i]f we do not hear from you . . . your account *may* be subject to

litigation," when taken as a whole, assessing the clear import of the language, does not suggest,

even to the unsophisticated, that "legal action . . . is *about to be initiated* and can be averted from

running its course only by payment."  *Pipiles*, 886 F.2d at 25 (emphasis added).  The use of

tentative words like "may" rather than "will," "*pre*-qualified" rather than "qualified," and

"eligible" rather than "authorized" conveys that legal action is merely an option rather than a

foregone conclusion.  Unlike the arguably urgent language used in *Dewees*, the statement that Sorel's account has been "pre-qualified" as "lawsuit eligible" does not imply that Sorel's account is "*currently*" the subject of legal action.  Rather than threaten litigation, the letter merely advises that it is a possibility.

Moreover, I am not at all persuaded by Plaintiff's argument that the MRS Letter, when read in light of the Pre-Legal Notice that preceded it, creates a greater sense of urgency by implying something had changed for the worse.  First, I can discern no perceptible difference between the phrases "meets the guidelines for legal action" and "pre-qualified . . . as lawsuit eligible."  Second, in my view, reading the letters in combination actually *undercuts* Plaintiff's position.  The Pre-Legal Notice, which preceded the MRS Letter by only five days, stated unequivocally that "[n]o decision has been made to sue you yet, so you still have options."  PSF, Ex. A (Pre-Legal Notice).  Thus, the Pre-Legal Notice made clear that simply "meet[ing] the guidelines for legal action" does *not* mean a lawsuit is forthcoming.  Read in this light, the MRS Letter's statement that Sorel's account had been "pre-qualified by Capital One as lawsuit eligible" becomes *less* threatening, not more.

In a sense, this case is the mirror image of *Dewees*.  In *Dewees*, otherwise non-offensive conditional language regarding litigation (i.e., "*may* use any legal remedies") was negated by the arguably threatening language that surrounded it, notably phrased in the present progressive tense (i.e., "*currently* being reviewed for potential litigation").  *See Dewees*, 506 F. Supp. 2d at 136.  Here, in contrast, the only arguably offensive language (i.e., "pre-qualified" as "lawsuit eligible") was surrounded by so many conditional words and phrases that any conceivable threat of imminent legal action was diffused (i.e., "*If* we do not hear from you, your account *may* be *subject* to litigation" followed by "*If* this were to occur . . . .").  Read—as *Dewees* suggests—in

context, even the least sophisticated consumer would not interpret the MRS Letter as a threat of imminent legal action, particularly after having been informed just a few days before that "no decision has been made to sue you."  Thus, the MRS Letter does not, as a matter of law, violate section 1692e and summary judgment must enter in favor of the defendant.

    C.   <u>Section 1692g Liability (Count VIII)</u>

Lastly, Sorel claims the same purported threat of imminent litigation "overshadows" the validation notice contained in the MRS Letter in violation of section 1692g(b).[11]  Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J., at 18.  Again, I disagree.

Section 1692g(b) provides that, "any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  15 U.S.C. § 1692g(b).  "When a notice contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the Act."  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996).  "A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights."  *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998).  "Examples of overshadowing or contradiction within a validation notice include demands

---

[11] Pursuant to 15 U.S.C. § 1692g, a debt collection letter must disclose to a consumer: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement indicating that, unless the debtor disputes the validity of the debt within thirty days of receiving the debt collection letter, the debt will be presumed valid; (4) a statement indicating that, if the debtor notifies the debt collector in writing within thirty days of receiving the debt collection letter that the debt is disputed, the debt collector will obtain verification of the debt and mail a copy of the verification to the debtor; and (5) a statement indicating that, if requested by the debtor within thirty days of receiving the debt collection letter, the debt collector will provide the debtor with the name and address of the original creditor, if different from the current creditor. 15 U.S.C. § 1692g(a)(1)-(5).  This notice is generally referred to as a "validation notice."  *See, e.g.*, *Russell v. Equifax A.R.S.*, 74 F.3d 30, 32 (2d Cir. 1996).

for immediate payment and threats to take adverse action against the consumer prior to the expiration of the thirty-day dispute period." *Gervais*, 479 F. Supp. 2d at 277 (internal quotations omitted); *Russell*, 74 F.3d at 34 (threating to post the debt if not paid within 10 days contradicted the validation notice); *see also Unger v. Nat. Revenue Grp., Ltd.*, 2000 WL 1897346, at *3-4 (E.D.N.Y. Dec. 8, 2000) (holding statement that "payment in full is due now" contradicted and overshadowed a collection letter's validation notice giving the consumer 30 days to dispute the debt).

Here, Plaintiff's section 1692g(b) claim fails.  As noted above, the statement "your account has been pre-qualified by Capital One as lawsuit eligible . . . [and] may be subject to litigation" does not, as a matter of law, threaten imminent legal action.  But even if it did, the statement does not contradict or overshadow the validation notice contained in the MRS Letter. The notice is clear and effective:  it is printed on the front page and in the same font and size as all other parts of the letter.  It sits directly below the headline, "IMPORTANT CONSUMER INFORMATION," subsequent to the "pre-qualified" language.  Moreover, the MRS Letter contains no threats to take adverse action against the Plaintiff prior to the expiration of the mandatory 30-day validation period.  In fact, the MRS Letter contains no stated time limit whatsoever in which the debt must be paid.  Accordingly, the MRS Letter does not violate section 1692g(b) as a matter of law and MRS is entitled to summary judgment on this claim as well.

## IV.     Conclusion

For the reasons stated above, Defendant's motion for summary judgment (doc. # 79) is GRANTED.  As a result, Plaintiff's cross-motion for summary judgment (doc. # 86) and motion for class certification (doc. # 90) are hereby DENIED as moot.  The Clerk shall close this file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 20th day of August 2012.

_/s/ Stefan R. Underhill_____
Stefan R. Underhill
United States District Judge